## Staunton.

## WOLONTER V. UNITED STATES CASUALTY COMPANY.

### September 17, 1919.

1. DEMURRER TO THE EVIDENCE—*General Rule Upon Demurrer.*— Upon a demurrer to the evidence, the testimony of witnesses for the demurree must be accepted as true unless inherently incredible, or judicially known to be untrue; and if several inferences may be drawn from the evidence, differing in degrees of probability, those most favorable to the demurree must be adopted unless forced, strained or manifestly repugnant to reason. This is the penalty imposed for withdrawing the case from the consideration of the jury who are the proper triers of questions of fact.

2. DEMURRER TO THE EVIDENCE—*Credibility of Plaintiff's Testimony.* —Plaintiff, the wife of assured, testified that a short time before the accident, she had furnished the agent of the insurance company with the proper address of assured, and that on another occasion a little later she had again furnished him with the proper address, and that he wrote it upon a paper he was filling out. On this last occasion the agent made out the release of assured of a claim under a sick benefit policy. This release did not contain the address mentioned. This fact, however, does not contradict plaintiff's statement that the address was given on another occasion, and even at the time of the release the address might have been written on another paper. The agent had been requested to obtain the address by the company and had promised to do so. Defendant's version was that as the release did not contain the address in question plaintiff's statement must have been false.

   *Held:* That, notwithstanding defendant's version was the more probable, it must be held on a demurrer to the evidence that the address was given to the agent before the accident.

3. INSURANCE—*Authority of Soliciting Agent—Change of Address of Assured.*—If an agent of an insurance company to solicit insurance was not empowered at the time of his appointment as agent to receive notice of the change of address of assured, he became so empowered where the insurance company requested him to obtain the address of the assured and he undertook to do so.

4. ACCIDENT INSURANCE—*Notice of Cancellation—Sufficiency of Notice—Address of Assured.*—In the instant case the records of the company should have shown, but for the negligence of the company or its agents, upon which it cannot rely, that the words "care of Virginia Bridge Company" were a part of the address of the assured at Roanoke, Virginia. A notice of cancellation, which did not conform to this address, but was merely addressed to the assured at Roanoke, Virginia, was insufficient. It was wholly immaterial whether the assured was still in the employment of the bridge company or not, or whether a letter addressed to him in care of that company would have reached him or not; the contract of the parties stipulated how the notice was to be sent, and it was not so sent.

5. ACCIDENT INSURANCE—*Notice of Cancellation—Sufficiency of Notice—Address of Assured.*—A contract of accident insurance providing that the company might cancel the policy by written notice mailed to the latest address of assured appearing on the company's record with the company's check for the unearned part of the premium, is a valid contract, and the company has the right to cancel in the manner provided. If the notice properly addressed was mailed to the assured at his latest address appearing on the company's record, accompanied by the company's check for the unearned premium, that was sufficient. The assured assumed the risk of the due receipt of the notice.

6. ACCIDENT. INSURANCE—*Duty of Company as to its Records.*—It is the duty of an accident insurance company to see that its records correctly set forth the facts that are communicated to it, and it will be held to the same measure of responsibility as if it had done so. The company makes and keeps its own records, and the assured is powerless to do more than communicate to it such facts as are necessary to enable it to make proper entries on its records. If from negligence or other cause not chargeable to the assured, its records do not correctly state the facts, they cannot be vouched in bar of a valid claim of assured.

7. ACCIDENT INSURANCE—*Notice of Cancellation—Address of Assured—Case at Bar.*—In the case at bar, from the standpoint of a demurrer to the evidence by the defendant, notice of a change of residence was given twice to an agent of the company who had been requested to obtain the address, and the records of the company did not show the change, and when the policy was originally taken out the address of the assured was given as "in care of Virginia Bridge and Iron Company," and this was not shown by the records of the company.

*Held:* That a notice of cancellation not addressed to assured at his place of residence or "in care of Virginia Bridge and Iron Company" was fatally defective.

8. APPEAL AND ERROR—*Invited Error.*—In an action upon an accident insurance policy, defendant moved to strike out certain oral evidence in regard to the latest address of assured appearing on its records, and afterwards demurred to the evidence. The trial court sustained the motion of the defendant and the demurrer to the evidence. The Supreme Court of Appeals was unable to ascertain from the record what evidence the court excluded under this ruling, but held from clearly admissible evidence that the judgment of the trial court in sustaining the demurrer to the evidence was erroneous. Although the demurrer to the evidence was interposed after the motion to exclude, both were passed on at the same time, and if the defendant suffered in consequence thereof, and would not have demurred if its motion to exclude had been previously overruled, it cannot complain of the error, as it invited it.

Error to a judgment of the Corporation Court of city of Roanoke in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Brown & Price* and *Dillard & Dillard,* for the plaintiff in error.

*Robt. H. Talley,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an action on an accident policy to recover for the accidental death of the insured. After all the evidence was introduced the defendant demurred thereto, and the trial court sustained the demurrer and entered judgment for the defendant. To that judgment this writ of error was awarded.

The only question in controversy is: "Was the policy in force at the time of the accident resulting in the death of the insured?"

The policy contains the following provision: "The company may cancel this policy at any time by written notice delivered to the insured or mailed to his latest address appearing on the company's record with its check for the unearned part, if any, of the premium, but such cancellation shall be without prejudice to any claim arising on account of disability commencing prior to the date on which the cancellation takes effect."

The statute (Acts 1912, p. 137, § 1) provides that accident policies shall, amongst other things, contain the following provision:

"(h) A provision that the policy may be cancelled at any time by the company by written notice delivered to the insured or mailed to him at his last address as shown by the records of the company and the tender of the company's check for the unearned portion of the premium * * * ."

The case, stated from the standpoint of a demurrer to the evidence, is as follows: C. R. Fishburne was the agent of the insurance company in the city of Roanoke to solicit insurance in the company, and on July 21, 1914, he obtained from John Wolonter applications for two policies which were subsequently issued to him and the premiums thereon duly paid. One of these policies was a sick benefit policy, and the other the accident policy in suit. Two claims under the sick benefit policy were asserted and paid. The application for the accident policy was made upon a printed form with blanks left for information to be furnished by the assured. So much of the form as is necessary for our purposes, with the information indicated by italics, is here inserted.

"(g) My post-office address is City, *Roanoke*, State, *Va.*

"(h) The firm or corporation with which I am connected as an employee is *Virginia Bridge & Iron Company.*

"The business conducted is *Bridge Building.*

"The business address is *Care of Virginia Bridge Company,* "City, *Roanoke*, State,...............

"(i) My occupation is *Laborer* (Hooper)."

At the time the application was made, the insured resided outside of the corporate limits of the city of Roanoke, and had neither city nor rural free delivery. Afterwards he moved to 116 E. Salem avenue, within the city and mail delivery limits. He gave no orders to the post officials for delivery of his mail at any time. The first claim under his sick benefit policy was adjusted and paid by Fishburne. The second claim under the sick benefit policy was adjusted and settled by an adjuster of the company, at Fishburne's office in the city of Roanoke, Va., about the first of February, 1915. Prior to this time, and after Wolonter had moved into the city, he obtained a certificate from Dr. Parker as to the character of his sickness for which the claim was to be asserted, and sent it to Fishburne, the agent of the company, by his wife, who is beneficiary in the accident policy and the plaintiff in this action. She then notified Fishburne of their changed residence, and that her husband wished all communications "from Mr. Fishburne and the company with reference to these policies sent to 116 E. Salem avenue, Roanoke, Virginia." Fishburne wrote the address on a slip of paper, and subsequently, when the adjuster arrived, she received, by private messenger, a note from Fishburne addressed to her at "116 E. Salem avenue, Roanoke, Va.," calling her to his office to meet the adjuster and settle the second sick benefit claim. As to what transpired at this meeting, she testifies that, "After we had agreed upon the amount of

the settlement *and while Mr. Fishburne was filling out some paper,* he asked me, among other questions, for John's address, and I told him, 116 E. Salem avenue, Roanoke, Va." She does not state what this paper was, but says, "Mr. Fishburne wrote the address on the paper he was filling out, I saw it there, and my husband signed the paper."

On February 8, 1915, the insurance company mailed a notice of cancellation of the policy in suit in New York city, addressed to "John Wolonter, Roanoke, Va." A check for the unearned premium was enclosed with the notice of cancellation. The notice arrived in Roanoke on February 9, 1915, but was not delivered till February 13, 1915, when the plaintiff was informed by Fishburne that the policies had been cancelled, and directed her to go to the post-office and inquire for the notices. This information was furnished by Fishburne in response to an inquiry by the plaintiff over the telephone, who had been informed by the hospital authorities that the policy in suit had been cancelled. Wolonter was mortally wounded on February 12, 1915, and died February 14, 1915.

The two policies hereinbefore referred to were sent from the home office of the company in New York in envelopes addressed to "John Wolonter, Roanoke, Va., care Virginia Virginia Bridge & Iron Company," and were delivered to Wolonter at the bridge company's office. All other letters received by John Wolonter or the plaintiff, from either Fishburne or the insurance company, were addressed to "Roanoke, Virginia, care of the Virginia Bridge & Iron Company," and when Fishburne was notified of the changed address, after he had been requested by the company to get the correct address, "he agreed that he and the company would thereafter address all communications with reference to said policies to us at 116 E. Salem avenue,

Roanoke, Va." Wolonter was a foreigner and never re-received any letters from any one except Fishburne or the insurance company. He never received any addressed simply to "Roanoke, Va.," from either Fishburne or the company. On December 30, 1914, the company wrote Wolonter, enclosing blank form for proof of loss under his sick benefit policy. This letter was addressed "John Wolonter, Roanoke, Va.," but was returned "Unclaimed" and "Not in City Directory." Thereupon the company wrote Fishburne, under date of January 11, 1915, notifying him of the return of their letter and requesting him to furnish them with Wolonter's address. Fishburne replied January 20, 1915, promising to endeavor to get the address.

[1] Some of the above statements of fact are contradicted by witnesses for the defendant, but upon a demurrer to the evidence, the testimony of witnesses for the demurree must be accepted as true unless inherently in-credible, or judicially known to be untrue; and if several inferences may be drawn from the evidence, differing in degrees of probability, those most favorable to the demurree must be adopted unless forced, strained or mani-festly repugnant to reason. *Horner* v. *Speed,* 2 Pat. & H. 616; *Washington & O. D. R. C.* v. *Jackson,* 117 Va. 638, 85 S. E. 496. This is the penalty imposed for withdrawing the case from the consideration of the jury who are the proper triers of questions of fact.

[2, 3] The defendant seeks to discredit the plaintiff by proving that one statement made by her was false, and then, applying the rule *falsus in uno,* to impeach other material statements made by her. Without going into a discussion of the rule and its limitations and qualifications, it is sufficient to say that it is not clearly shown that the statement referred to was not true. The statement referred to is, "While Mr. Fishburne was filling out some

paper, he asked me, among other questions, for John's address, and I told him '116 E. Salem avenue, Roanoke, Va.' * * * Mr. Fishburne wrote the address on the paper he was filling out, I saw it there, and my husband signed the paper." This is alleged to have taken place when the adjuster and others were present at Fishburn's office adjusting and settling the second loss under the sick benefit policy. The statement is denied by Fishburne and the adjuster, and the records of the company are produced showing that they contain no paper signed by the assured giving the changed address aforesaid. It is earnestly insisted by counsel for the defendant that the paper Fishburne "was filling out" at the time was the release of the assured of his second claim of loss under the sick benefit policy, and that, as this does not show any such address, her statement is plainly false. But it will be observed that the plaintiff did not state what the paper was, nor does it appear from the record that the release was the only paper signed by the assured on that day. Fishburne had very recently theretofore been requested by the company to obtain the address of the assured, and it might very well have occurred to him, while filling out the release, to ask for the address of the assured, write it down and have it signed by him. While it is more probable that the defendant's version is the correct one, it was not an unfair inference for the jury to have drawn that it was some paper other than the release which was signed by the assured in which the address was given as stated by the plaintiff. In view of the fact that Fishburne had been requested to obtain the address and had promised to do so, we cannot, on a demurrer to the evidence by the defendant brand as false the positive statement of the plaintiff that on two separate occasions, within a short while before the accident, she had furnished him with the

proper address. It is true that the release of the sick bene-fit policy, signed by the assured, does not contain the address mentioned, but this does not contradict the plaintiff's state-ment that the address was given on another occasion, or that, at the time of the release, it may have been written on another paper. On defendant's demurrer to the evi-dence, we must hold that the changed address was given to Fishburne before the accident. It is said, however, that Fishburne was not the agent of the company to receive notice of the change of address of the assured. If he was not so empowered at the time of his appointment as agent to solicit insurance, he was subsequently. The defendant, by its letter to him under date of January 11, 1915, noti-fied him that a letter addressed to the assured, "Roanoke, Va.", had been returned "Unclaimed" and "Not in City Directory," and requested, "Will you be kind enough to furnish us with the address of Mr. Wolonter?" Fishburne replied under date of January 20, 1915, undertaking to obtain the address. Fishburne then became the agent of the defendant to obtain and forward the address, and if an agent to obtain, he was the agent to receive. According to the testimony of the plaintiff, the changed address was thereafter furnished to Fishburne twice. It is unneces-sary, therefore, to consider the effect of the statue declar-ing, "that accident * * * insurance companies not incor-porated by the laws of the State of Virginia, but legally authorized to do business in this State, shall not make con-tracts of insurance on persons or property herein, save through regularly constituted agents of such company, re-siding in the State of Virginia." Acts 1906, p. 141, sec. 34.

[4] It does not seem, however, that any notice of a change of address was necessary. Both the policy and the statute required the notice of cancellation to be sent to the assured's "latest address appearing on the company's

record." A jury might reasonably have inferred from the evidence that Fishburne was the agent of the company to solicit the insurance; that he was provided with printed forms for applications, containing blanks for information to be furnished by the assured; that, as the assured and the plaintiff were foreigners who had no correspondence with anyone, they were not sufficiently familiar with the English language to fill out these blanks, and that they were filled out by Fishburne, as agent of the company. The jury might also very reasonably have inferred that the assured gave to Fishburne as his business address, "Care of Virginia Bridge Company, Roanoke," and that Fishburne placed the words "Care of Virginia Bridge Company" on the wrong line, as it would seem absurd to address a communication to "Virginia Bridge & Iron Company, Care Virginia Bridge Company." This view is confirmed by the testimony for the plaintiff that the policies were sent by mail from the home office in New York city addressed to "John Wolonter, Roanoke, Va., Care Virginia Bridge & Iron Company," and that "all of the other letters either John or I received either from Mr. Fishburne or the insurance company, were addressed to 'Roanoke, Virginia, care of the Virginia Bridge & Iron Company.'" In addition to this, Fishburne himself testifies that, when the application for the policy in suit was made, and the assured was asked to give his address, "the only address he ever gave me was *in care of Virginia Bridge & Iron Company.*" In this view of the case, the records of the company should have shown, but for the negligence of the company or its agents, upon which it cannot rely, that the words "care of Virginia Bridge Company," were a part of the address of the assured. The notice of cancellation, however, did not conform to this address, and was for that reason insufficient. It was wholly immaterial

whether the assured was still in the employment of the bridge company or not, or whether a letter addressed to him in care of that company would have reached him or not; the contract of the parties stipulated how the notice was to be sent, and it was not so sent. In either view of the case, we are of opinion that the notice of cancellation was insufficient.

[5] The contract was a valid contract, and the company had the right to cancel it in the manner therein provided. If the notice properly addressed was mailed to the assured at his latest address appearing on the company's record, accompanied by the company's check for the unearned premium, that was sufficient. The assured assumed the risk of the due receipt of the notice. *Manchester F. Assur. Co.* v. *Ins. Co.*, 91 Ill. App. 609; *International Life Ins. & Trust Co.* v. *Franklin Fire Ins. & Trust Co.*, 66 N. Y. 119.

[6, 7] But it was the duty of the company to see that its records correctly set forth the facts that were communicated to it, and it will be held to the same measure of responsibility as if it had done so. The company makes and keeps its own records, and the assured is powerless to do more than communicate to it such facts as are necessary to enable it to make proper entries on its records. If from negligence or other cause not chargeable to the assured, its records do not correctly state the facts, they cannot be vouched in bar of a valid claim of an assured. In case at bar, we have seen that, from the standpoint of a demurrer to the evidence by the defendant, notice of a change of residence was given twice to an agent of the company who had been requested to obtain the address, and the records of the company did not show the change, and that when the policy was originally taken out the address of the assured was given as "in care of Virginia Bridge & Iron Company," and this was not shown by the records of the company.

In the final judgment entered by the trial court, the following rulings were made: "Upon the motion of the defendant to strike out all oral evidence introduced to show that the latest address of John Wolonter appearing on the records of the defendant, was other than 'Roanoke, Virginia,' said records having been, after said oral evidence was introduced, produced and filed as exhibits in this action, and also upon the demurrer to the evidence interposed by the defendant in this action on November 18, 1915, doth sustain said motion of the defendant, and doth sustain said demurrer to the evidence interposed by the defendant in this action."

[8] We are unable to ascertain from the record what evidence the court excluded under this ruling. Certainly, the evidence hereinbefore recited was clearly admissible, and upon that evidence the judgment of the trial court should have been for the plaintiff. If it was the intention of the trial court to exclude any part of it, then its ruling was erroneous. The demurrer to the evidence was interposed after the motion to exclude had been made, but both the motion to exclude and the demurrer to the evidence were passed on at the same time. If the defendant had suffered in consequence thereof, and would not have demurred if its motion to exclude had been previously overruled, it cannot complain, as the error was invited by it. *Bugg* v. *Seay,* 107 Va. 648, 60 S. E. 89, 122 Am. St. Rep. 877.

It is insisted by counsel for the defendant in error that this ruling of the trial court cannot be considered by this court because not assigned as error in the petition for the writ of error, but in this he is mistaken. The error is sufficiently assigned in the petition.

The petition states that "the court's ruling in sustaining the motion to exclude all oral testimony, which proved that the defendant company had a record of the new address,

which record they failed to produce at the hearing, is so clearly erroneous, and the burden that the court undertook to shift on your petitioner is so unreasonable and un-fair, that your petitioner does not deem it necessary to make further argument with reference to the action of the court in sustaining the motion."

For the reasons hereinbefore stated, we are of opinion that the judgment of the corporation court is erroneous and must be reversed, and this court proceeding to enter such judgment as the trial court should have entered will enter a judgment in favor of the plaintiff in error against the defendant in error for the sum of one thousand dollars, with interest thereon, after the rate of six per centum per annum from November 18, 1915, until payment, and her costs in this court and also in the trial court.

*Reversed.*