## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HARLEYSVILLE MUTUAL INSURANCE COMPANY v. ETHEL O. DOLLINS.

June 22, 1959.

Record No. 4963.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Henry E. Belt*, for the plaintiff in error.

*Willard I. Walker* and *Richard H. Barrick* (*Walker, Woodson & Walker.* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action by Ethel O. Dollins to recover on a policy of automobile collision insurance issued by Harleysville Mutual Insurance Company, hereinafter referred to as Harleysville or defendant, damages caused to her automobile.

The facts are simple, clear and without material conflict.

On April 12, 1957, William C. Dollins, seventeen-year old son of Ethel O. Dollins, went to the office of Charlottesville Motors, an automobile dealer in Charlottesville, Virginia, with reference to the purchase of an automobile. Being a minor, his mother came into the conference and purchased in her name a Ford automobile under a conditional sales contract. The contract was signed by Mrs. Dollins and her son. The purchase price included $88, premium for collision insurance on the automobile. Charlottesville Motors, hereinafter referred to as Motors, was to obtain the insurance coverage for one year and pay the premium to the insurer it selected. After that year the insurance was to be obtained by Mrs. Dollins. Seven hundred dollars, a part of the purchase price of the car, was paid in cash, and Mrs. Dollins executed deferred payment notes for the balance. On the same day, Motors telephoned the G. Benton Patterson Insurance Service, an insurance agency, hereinafter called Patterson, and requested that the latter issue a collision insurance policy covering Mrs. Dollins' automobile. Patterson, as agent of Harleysville Mutual Insurance Company, immediately issued the policy under date of April 12, 1957, and delivered it to Motors. Motors paid Patterson the required premium and retained the policy.

Several days after April 12, 1957, Harleysville notified its agent, Patterson, that Ethel O. Dollins was not an acceptable risk and directed cancellation of the policy. Patterson immediately notified Motors to that effect, and requested the return of the policy. Motors returned the policy to Patterson, and requested that like insurance coverage be placed on the Dollins' car with another company. Pursuant thereto, Patterson, under date of May 7, 1957, issued a policy on the car in American Fire & Casualty Company. This policy was delivered to Motors. When American Fire & Casualty Company was notified of the issuance of this policy, it notified Patterson that Mrs. Dollins was not an acceptable risk and requested cancellation. Patterson then notified Motors of the request and the policy was sur-

rendered by Motors to Patterson. Motors requested Patterson to place the insurance with some company which would accept it.

Patterson, forgetting that Harleysville had declined to carry the first policy herein mentioned, again issued an insurance policy on the automobile of Mrs. Dollins in Harleysville, dated July 5, 1957, and notified Harleysville of the issuance of the policy. Harleysville promptly notified Patterson that it had once refused this coverage, and that the policy of July 5, 1957, should be immediately cancelled, without any payment of premium. Thereupon, Patterson, on or before August 1, 1957, notified Motors that this policy was being cancelled, requested its return, and advised that it would be unable to obtain any insurance on the car. Motors surrendered the policy to Patterson, and the later returned the premium to Motors.

On August 1, 1957, Motors wrote a post card, addressed to Ethel O. Dollins at her residence at Keswick, Virginia, advising her that the last issued insurance policy had been cancelled, and that some arrangement would have to be made by her to secure the balance she owed on the purchase of the automobile. The post card was delivered at the residence of the plaintiff, where she lived with her husband and son. Thereafter, her husband and son went to the office of Motors and tried to make some arrangement to secure Motors the balance owing on the purchase price of the car; but the parties were unable to come to terms.

Harleysville did not give, or attempt to give, written notice of cancellation, either to Motors or to Mrs. Dollins.

On August 29, 1957, the automobile, while being driven by William C. Dollins, was wrecked in a collision. On the following day, Mrs. Dollins began to make inquiry about the insurance coverage on her car. She said that she had received no notice, written or verbal, from anyone that the insurance policy issued to her by Harleysville, dated July 5, 1957, was to be cancelled, or had been cancelled, until August 30, 1957; and that no part of the premium for its issue had been returned to her by Harleysville, Patterson, its agent, or Motors.

Mrs. Dollins also testified that she was sick and in a hospital at and about the time when the post card notice of cancellation was sent to her by Motors; and that its arrival at her home address was never brought to her attention until after the accident, and she had begun to inquire as to what company carried the insurance. She said that she gave no authority to Motors or to anyone else to receive

on her behalf notice of cancellation of the insurance policy issued to her, or to agree to its cancellation, nor discussed the matter with Motors; and that if she had known that the policy was to be cancelled, or had been cancelled, she would have sought and obtained other insurance coverage, or stopped the use of her car.

Upon conclusion of all the evidence, the court sustained Mrs. Dollins' motion to strike defendant's evidence, and enter summary judgment in her favor for the amount stipulated to cover the damages sustained by her. Thereupon, the court, holding that Virginia Code, § 38.1-381.1, 1958 Cum. Supp., had not been complied with, and that there was no evidence on behalf of Harleysville to refute the plaintiff's evidence that she had no actual notice, discharged the jury, and entered summary judgment in favor of Mrs. Dollins.

Defendant excepted to the action of the court upon the grounds that the evidence showed that Motors was the authorized agent of the plaintiff and acquiesced in the cancellation of the policy, and that it was a jury question whether Mrs. Dollins had actual and timely notice of cancellation and acquiesced therein.

We granted defendant this writ of error.

Condition 15 of the policy reads as follows:

"Cancelation—* * * This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing."

Ethel O. Dollins was "the insured named in Item 1 of the declarations" of the policy, and the only one named in that item.

Code, § 38.1-381.1, 1958 Cum. Supp., relating to notices of cancellation of motor vehicle insurance policies, reads as follows:

"No written notice of cancellation sent by mail by an insurer to an insured in accordance with the provisions of a motor vehicle insurance policy shall be effective unless it is sent by registered mail or unless at the time of the mailing of said notice, the insurer has obtained from the Post Office Department a written receipt showing the name and address of the insured and the insurer has retained a duplicate copy of said notice upon which is endorsed a certificate

by the insurer that the duplicate copy is a copy of the notice which was sent to the insured in the mail for which said receipt was obtained.

"In the event that any such notice is mailed by other than registered mail or without obtaining the receipt and retaining the duplicate copy of said notice endorsed as specified above, then the burden of proof that said notice was actually delivered to the insured shall be upon the insurer."

This Code provision became a part of the insurance policy contract, and if Harleysville sought to cancel the policy, it was required to comply with it. *Ampy* v. *Insurance Co.*, 200 Va. 396, 400, 105 S. E. 2d 839.

■ It is settled law in Virginia that parties "to insurance contracts are bound by the same rules of construction that apply to other contracts, subject, of course, only to provisions of law affecting insurance contracts," and in the absence of latent ambiguity, contracts are to be construed according to their terms and provisions. When the language is ambiguous or doubtful in an insurance policy, it must be interpreted more strongly against the insurer. *Ayres* v. *Harleysville Mutual Casualty Co.*, 172 Va. 383, 2 S. E. 2d 303.

Strict compliance with the provisions of an insurance policy or a statute for cancellation by the mailing of notice is necessary to effect a cancellation. *Wolonter* v. *U. S. Casualty Co.*, 126 Va. 156, 166, 101 S. E. 58; *Naify* v. *Pacific Indemnity Co.*, 11 Cal. 2d 5, 76 P. 2d 663, 115 A. L. R. 476, and annotation 115 A. L. R. 482.

■ The evidence, without contradiction, shows that plaintiff went to Charlottesville Motors to buy an automobile and not insurance, and that Motors was interested in insurance only as a matter of security for the purchase price of the car. Motors was clothed only with the power and authority to obtain the insurance coverage for one year. Obtaining insurance coverage and cancelling such coverage are very different matters. The authority to procure an insurance policy does not include authority to cancel the policy. Express authority to procure by no means implies authority to cancel or consent to cancellation. *Bowles* v. *Rice*, 107 Va. 51, 57 S. E. 575; 1 M. J., Agency, § 22, page 289.

There is not the slightest evidence that Mrs. Dollins authorized Motors to either waive the required notice of cancellation of her policy or to accept cancellation on her behalf.

The evidence shows that Harleysville sent no written notice of

cancellation by mail to Mrs. Dollins or to Charlottesville Motors, as required by the express terms of its contract and by Code, § 38.1-381.1. This was essential for due cancellation. In fact, there was no written communication between Harleysville and Mrs. Dollins, her husband and son. Mrs. Dollins' evidence that she had no actual notice of the attempted cancellation in uncontradicted.

There was no evidence upon which to submit to the jury the question whether a legal, effective notice of cancellation of the contract had been given by Harleysville or whether Mrs. Dollins had actual notice of the purpose of Harleysville to cancel. A cancellation by a system of verbal relays cannot take the place of a legal requirement which provides for written notice.

For the reasons stated, we are of opinion that the procedure adopted and the conclusion reached by the trial court are amply supported by both the evidence and the law.

*Affirmed.*