340

# CIRCUIT COURT OF KING GEORGE COUNTY

Erie Insurance Exchange

v.

Stuart Robeson, Jr., et al.

October 2, 2000

Case No. 99000041

BY JUDGE JAMES W. HALEY, JR.

The issue here for determination is the liability of a subrogor to his subrogee when the former dismisses with prejudice the claim to which the subrogation applies.

The stipulated facts can be stated with brevity. Kenneth and Tanya Woltz were injured in a motor vehicle accident by a car driven by Joshua Wood, an uninsured driver. Counsel for the Woltzes filed a motion for judgment against Wood and began settlement negotiations with Erie, the Woltzes' carrier, under that company's uninsured coverage provisions. Erie paid Tanya Woltz $6,800.00 and Kenneth Woltz $7,000.00, and each executed a Release and Settlement Agreement, which was transmitted by a letter specifically noting Erie's subrogation rights, and both were reviewed by their counsel. By the terms of that document, the Woltzes subrogated their rights against Wood to Erie to the extent of the payments and specifically agreed to "assign Erie" rights of recovery against Wood, "not make any settlement with nor give any separate release" to Wood, to permit Erie to proceed with suit against Wood in their names and sign all documents necessary to do so, to cooperate with Erie in prosecuting such a suit, and to pay to Erie out of any recovery such sum as to reimburse Erie for their payment.

After execution of these documents and payment of the above sums, counsel for the Woltzes prepared an order dismissing the pending action against Wood "with prejudice" and without any reservation of Erie's rights, which order became final on February 18, 1998.

The Erie policy issued to the Woltzes contains the following provisions. Under General Policy Conditions, the insured "is to help us enforce any right of recovery against anyone liable to anyone we protect" and "cooperate in the conduct of lawsuits" (Policy, p. 14, para. 1D 4-5); and "to the extent of the payment we make under this policy, we will have the right to recover from anyone else legally responsible. Anyone we protect will sign papers and do whatever is required to transfer this right to us, and do nothing to harm this right." (Policy, p. 15, para. 9.)

Erie filed suit against the Woltzes alleging a breach of the Release and Settlement Agreement and the terms of the policy and a violation of the provisions of Code § 38.2-2206, "Uninsured motorist insurance coverage," and seek as damages the respective sums paid to their insureds.

The case comes before the court upon cross-motions for summary judgment, the parties agreeing there are no material facts in dispute. Rule of Court 3:18.

The Woltzes (represented by new counsel) offer three defenses to Erie's claim. Each will be discussed *seriatim*.

(1) First, it is argued that the provisions of the policy and subrogation agreement impose duties and liabilities upon the Woltzes more onerous than those set forth in Code § 38.2-2206(G), that those duties and liabilities are in conflict with the Statute and thus void, and that that Statute, under familiar principles, should be liberally construed in favor of the insured. More specifically, defendants refer to Code § 38.2-2206(H), which states in part with respect to uninsured coverage "nor many anything be required of the insured except the establishment of legal liability. . . ."

Code § 38.2-2206(G) states in part that: "Any insurer paying a claim under this [uninsured] endorsement . . . shall be *subrogated* to the rights of the insured to whom the claim was paid against the person causing the injury. . . ."

"An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such a construction. See, *Insurance Co. v. Dollins*, 201 Va. 73, 77, 109 S.E.2d 405, 409 (1959)." *Hill v. State Farm Mut. Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 730 (1989).

*Blacks Law Dictionary* (6th ed., 1990) defines "subrogation" as "The substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that he who is substituted succeeds to the rights of

the other in relation to the debt or claim, and its rights, remedies, or securities." (p. 1427).

In short, to effect "subrogation," an insured is required to do substantially more than just participate in "the establishment of legal liability" of the tortfeasor. Indeed, the heart of subrogation requires the insured to pay over to the uninsured carrier such sums as may be collected from the tortfeasor to reimburse the carrier. Thus, in *U.S. F. & G. v. Byrum*, 206 Va. 815, 818, 146 S.E.2d 246, 248 (1966), the court states that upon payment of an uninsured motorist claim, the insurer "would have been subrogated to their rights against negligent third parties to the extent of such payment pursuant to the terms of sub-section (f) of § 38.1-381." (now Code § 38-2-2206(G)). See also, *United Services v. Nationwide Mutual*, 218 Va. 861, 241 S.E.2d 784 (1978).

This court concludes that the above-quoted portion of Code § 38.2-2206(H) does not limit the responsibilities of an insured to effect subrogation to those set forth in Code § 38.2-2206(G) and that the provisions of both the Erie policy and the Release and Settlement Agreement do no more than specify those actions required of an insured to effect subrogation. Accordingly, they are not void as in conflict with the provisions of Code § 38.2-2206.

In *State Farm Ins. Co. v. Arghyris*, 189 Va. 913, 928, 55 S.E.2d 16, 23 (1949), the court noted that "[T]he word 'cooperate' needs no interpretation," with respect to an insured's duty to do so, and then concluded:

> We may say that the rule requiring a liberal construction of insurance contracts does not confer a right or impose a duty on the courts to add new conditions, provision, or exceptions to such contracts which increase or decrease the obligations of the parties thereto.

(2) Defendants next argue that, if the insurance contract or Release and Settlement Agreement were breached, the breach was not material or prejudicial to Erie.

The subrogation rights to which Erie was entitled are derivative of the rights of the Woltzes as against the uninsured tortfeasor Wood. Erie's rights can rise no higher than that of the Woltzes. In, *Insurance Co. v. Gourdine*, 205 Va. 57, 62-63, 135 S.E.2d 120, 124 (1964), an insured had failed to forward notice of the institution of suit and a default judgment was entered. That judgment, however, was vacated and the matter set for a later trial, of which the insurer had notice and with whom the insured cooperated. The court held that the violation of the notice and cooperation provisions of the policy were material breaches but that the insurer had not been prejudiced thereby because

of the "first suit being dismissed before it ripened into complete legal effectiveness. . . ." The court noted the difference between a dismissal with and without prejudice and quoted a delightful simile from *M.F.A. Mut. Ins. Co. v. White*, 232 Ark. 28, 30, 334 S.W.2d 686, 687: "A dismissal without prejudice has been aptly described as being like a person blowing out a candle, which at his own pleasure may be lit again." In the instant case, the dismissal of the action of the Woltzes against Wood was with prejudice. Accordingly, their claim against Wood is extinguished, as are the rights of Erie, their subrogee, and that extinguishment constitutes a material breach of both the contract of insurance and the Release and Settlement Agreement.

(3) Defendants finally argue that the damages claimed by Erie, *i.e.*, the respective amounts paid to the Woltzes, are speculative and that Erie has not shown that it was actually damaged by the breaches of the contract of insurance or the Release and Settlement Agreement.

This court thrice inquired if the defendants wished to offer any evidence with respect to damages and the offers were declined.

In reliance upon *Webster v. Synan*, 242 Va. 24, 405 S.E.2d 616 (1991), this court holds Erie had proven its damages. Webster contracted to buy real property for $517,000 and as permitted by the contract assigned the same to Synan to $190,000 with a $20,000 down payment. The $20,000 was paid, but Synan refused to close, and Webster bought the property for its sales price of $517,000. Webster then sued Synan for the balance due on the assignment contract of $170,000. Webster proved the assignment contract and its breach and rested. Synan moved to strike on the grounds that Webster had not proved his damages, arguing that Webster could not both keep the property to be conveyed and the profit on the assignment contract, that the proper measure of damages could be proven in two ways, by showing actual expenses incurred by the breach of the assignment contract, or the market value of the property at the time of the breach and the contract price for the same. The trial court struck the evidence.

The Supreme Court reversed, relying upon *Atlantic Coast Realty Co. v. Townsend*, 124 Va. 490, 98 S.E. 684 (1919). The court stated that "when the plaintiffs proved the assignment, its breach by the assignee, and the net amount of the default of $170,000, the plaintiffs established a *prima facie* case of damages for lost profits." 242 Va. at 27, 405 S.E.2d at 618. The court went on to note that "upon retrial the defendant should be allowed to establish that at the time of the assignment's breach, the subject property was worth more than $517,000, the original contract price. *If the defendant carries such a burden,* the plaintiff's damages should be reduced by the amount of such increased value of the land." (Italics supplied.)

In *Webster*, the court held that once a *prima facie* case of damages was established, while the burden of persuasion as to the amount of damages remains with the plaintiff, the burden of production of evidence as to their diminishment shifts to the defendant. Such was the posture of the instant case. Erie proved how much it had paid. The defendants offered no evidence of diminishment, such as evidence of the likelihood of collection of this particular subrogation claim or evidence of a percentage collection rates in similar subrogation claims.

In light of the foregoing, judgment is granted in favor of Erie Insurance Exchange against Kenneth Woltz in the amount of $7,000.00 and against Tanya Woltz in the amount of $6,800.00 plus interest at the judgment rate from February 18, 1998, the date of the dismissal with prejudice of their action against Wood, plus costs.