**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1788**

DENISE REAGAN RUSSELL, individually and as Executor of the
Estate of Daniel Sean Reagan, deceased,

              Plaintiff - Appellant,

       v.

NATIONWIDE LIFE INSURANCE COMPANY,

              Defendant – Appellee,

       and

BRENT S. LUCAS; H.P. LUCAS & SONS, INCORPORATED,

              Defendants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Newport News.  F. Bradford Stillman,
Magistrate Judge.  (4:07-cv-00130-FBS)

Argued: September 22, 2010          Decided: November 12, 2010

Before NIEMEYER and DUNCAN, Circuit Judges, and Robert J.
CONRAD, Jr., Chief United States District Judge for the Western
District of North Carolina, sitting by designation.

Affirmed by unpublished opinion.  Judge Duncan wrote the
opinion, in which Judge Niemeyer and Judge Conrad joined.

**ARGUED:** Leonard Claro Heath, Jr., HEATH LAW, PLC, Newport News,
Virginia, for Appellant.  George J. Dancigers, MCKENRY,

DANCIGERS, DAWSON & LAKE, PC, Virginia Beach, Virginia, for Appellee. **ON BRIEF:** Joseph F. Verser, JONES, BLECHMAN, WOLTZ & KELLY, PC, Newport News, Virginia, for Appellant. Kira A. Ligato, MCKENRY, DANCIGERS, DAWSON & LAKE, PC, Virginia Beach, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Denise Reagan Russell ("Russell") appeals from the opinion of a United States magistrate judge holding that she was not entitled to proceeds of a Nationwide Insurance Company ("Nationwide") life insurance policy carried by her deceased husband, Daniel Sean Reagan ("Reagan"). The case was tried in a bench trial before the magistrate judge by consent and agreement of the parties pursuant to 28 U.S.C. § 636(c).[1] The court found that Nationwide met its burden of proving that it provided to Reagan the notice required by Virginia law before cancelling his policy for non-payment, and thus concluded that Russell was not entitled to proceeds from the policy. For the reasons set forth below, we affirm.[2]

I.

A.

Reagan obtained a life insurance policy with Nationwide on September 20, 2002, through H.P. Lucas & Sons, Inc., an insurance sales agent. Under the terms of the policy, premiums in the amount of $219.95 were due quarterly. Each premium

---

[1] In issuing an opinion following the bench trial, "the magistrate judge was acting for the court, and we therefore refer to the Opinion as that of the district court." Scott v. United States, 328 F.3d 132, 137 n.7 (4th Cir. 2003) (citing 28 U.S.C. § 636(c)(1)).

[2] Appellant's motion for supplemental briefing, filed (Continued)

3

billing statement included the following language: "A grace period of 31 days is allowed for the payment of premiums." J.A. 452. Further, the policy provided:

> GRACE PERIOD: If any premium after the first one is not paid when due, a period of 31 days from the due date of the unpaid premium will be allowed for payment. The policy will continue in force during this 31 day period. . . . This policy will lapse, without value, if premiums are not paid.

J.A. 394. Reagan paid the premiums through March 2003, when his employer, Seaford Baptist Church, agreed to take over the payments, deducting the amount from his salary. To reflect this arrangement, Reagan requested that Nationwide change his address of record to that of the church. Nationwide keeps computerized records of change of address requests, which reflect that Reagan's address was changed to "co David Phillips, PO Box 207, Seaford" on June 4, 2003. J.A. 453. David Phillips ("Phillips") was the administrator and accountant of the church. After June 2003, all billing statements were mailed to the church's PO Box, "c/o David Phillips." J.A. 451, 456. However, several letters regarding the policy, sent separately from the billing statements, were mailed after this date directly to Reagan at the church's PO Box, without "c/o David Phillips" included in the address.

---

September 29, 2010, is therefore denied as moot.

4

Reagan left his job with the church in December 2005. As a result, Phillips told Reagan that the church would cease paying premiums on the policy and that the December premium was the last one it would pay. According to Phillips, Reagan indicated that he would begin paying the billing statements after December. Reagan failed, however, to notify Nationwide of any change in address. Thus, his statements continued to be mailed to the church's PO Box.

Following Reagan's departure, Phillips directed the church's secretaries to forward any mail addressed solely to Reagan to Reagan's home address, and to give any mail addressed to Reagan "care of Phillips" to Phillips. Phillips thereafter received one communication from Nationwide in February 2006. Phillips did not open it. Instead, assuming it was a billing statement, he passed it on to Reagan. Phillips also reminded Reagan in February to change his address on file with Nationwide.

Reagan did not pay the premium due on March 20, 2006. Nationwide consequently prepared a notice stating that the premium was past due (the "Past Due Notice"), which was included within a billing statement dated April 10, 2006. This Past Due Notice further explained:

> THIS IS AN IMPORTANT REMINDER - Your premium is past due and the grace period will expire APR 20, 2006. If your payment is not received in the home office within

5

>     the grace period your policy will lapse effective MAR
>     20, 2006.

J.A. 417. Nationwide's records reflect that this Past Due Notice was sent to Reagan care of Phillips at the church's PO Box, which is where Reagan's billing statements were customarily sent. The parties dispute whether Reagan received this Past Due Notice. However, he undisputedly never paid the premium due by the end of the grace period, or any premium thereafter. Nationwide's records reflect that his policy lapsed on May 21, 2006, as a result of non-payment. Its system further shows that a Notice of Lapse was sent to Reagan at the church's PO Box on this date, with a copy mailed to his insurance agent, Brent S. Lucas ("Lucas"). Reagan passed away unexpectedly on November 14, 2006.

                              B.

Russell, individually and as executor of Reagan's estate, originally filed this action in the Circuit Court for the County of York and the City of Poquoson, Virginia, on November 7, 2007. Russell alleged breach of contract by Nationwide for failure to pay benefits due under Reagan's life insurance policy. She argued that because Nationwide failed to provide Reagan the notice required by Virginia law before cancelling his policy, the policy remained in place as of his death. Nationwide

6

removed to the United States District Court for the Eastern District of Virginia on December 11, 2007, on diversity grounds.

Prior to trial, the court narrowed the issues in the case to one: whether Nationwide mailed, and Reagan actually received, the Past Due Notice required by state law for the termination of a policy. The matter proceeded to a bench trial.

The crux of Nationwide's argument at trial involved evidence that the required Past Due Notice was properly sent to Reagan's address of record. Nationwide employees testified that the company's billing is done through the computer system Cyberlife. Cyberlife automatically generates billing statements, including Past Due Notices, when it is time to bill a customer. The program then interfaces with Nationwide's printing system, which prints the billing statements through an automatic printer, then sends them to an automatic sorter, mailer, and stamper. Accordingly, Nationwide's system for generating and mailing billing statements is entirely automated; no hard copies are kept and no certificates of mailing exist for these statements. To keep track of documents mailed, the Cyberlife system interfaces with another system, MOBIUS, which retains electronic copies of the billing statements sent out by Cyberlife.

Nationwide employees testified that the MOBIUS system retained a copy of the Past Due Notice allegedly sent to Reagan

7

on April 10, 2006, and reflected that Cyberlife had generated and mailed the notice at that time. An employee further testified that the system auto-generates a report if it experiences a malfunction, but that there were no reports of any malfunctions during the spring of 2006.

In response, Russell presented the testimony of Phillips, who explained that he did not remember seeing any mail addressed to Reagan--care of Phillips or otherwise--after February 2006. However, Phillips conceded that the church secretaries could have forwarded mail addressed to Reagan without Phillips's knowledge, despite his policy that the secretaries should give to him any mail addressed to Reagan care of David Phillips. Russell also presented, as evidence of the unreliability of Nationwide's automated system, the testimony of Reagan's agent Lucas. Lucas testified that he never received a copy of the May 21, 2006, Notice of Lapse for Reagan's policy, although Nationwide's records reflected he had been copied on this statement. Lucas also explained that each morning he received from Nationwide a "beginning-of-day" report that listed all new policies and all cancelled policies. However, his beginning-of-day report for that day did not reflect the cancellation of Reagan's policy.[3] Finally, Russell presented the testimony of

---

[3] Russell also presented evidence that Nationwide's system
(Continued)

8

three individuals who heard Reagan say, after the lapse date of the policy, that he had a policy presently in place.

The district court determined that Russell was not entitled to relief. It noted that under the relevant Virginia law, "[i]t is the insurer's burden to prove that notice was provided to the customer." J.A. 570. It then found that Nationwide's evidence that its automated system showed the Past Due Notice was mailed sufficed to prove proper mailing. In so finding, the court rejected Russell's argument that Nationwide did not send the Past Due Notice to the proper address because it included "c/o David Phillips." It found that this address was correct, as "Reagan's address on record with Nationwide was 'c/o David Phillips, PO Box 207, Seaford, VA 23696-0207.'" J.A. 573. Applying the Virginia rule that proof of proper mailing establishes a presumption of actual receipt, the court found that Nationwide's evidence established a rebuttable presumption that Reagan actually received the Past Due Notice.

---

inaccurately reflected the addresses to which a June 4, 2003, letter confirming Reagan's change of address was sent. Nationwide's records reflected only that the letter was sent to Reagan's former address. Russell put into evidence a hard copy of the letter that had been sent to the church's address, arguing that this letter was further evidence of Nationwide's unreliable record-keeping. However, a Nationwide employee testified that records of these letters, unlike billing statements and Past Due Notices, were not housed on the MOBIUS system.

Further, the district court found that Russell's evidence failed to adequately rebut the presumption that Reagan actually received the Notice of Lapse. It credited Phillips's testimony that he did not receive the Past Due Notice, but noted his concession that it was "'certainly possible' that one of the church's secretaries could have forwarded mail addressed to Reagan without his knowledge and despite his policy." J.A. 574. The court accepted the testimony of Russell's three witnesses who explained that Reagan told them, between May and November 2006, that he had a life insurance policy in place. However, it found that this evidence, while possibly tending to demonstrate non-receipt of the Past Due Notice, was undercut by the fact that Reagan knew he needed to begin paying the premiums after December 2005 but never did so.

Having thus found that Reagan received the notice required by Virginia law before his policy was cancelled, the court denied Russell's request to collect under the policy. This appeal followed.

## II.

The issue before us is whether Nationwide complied with Virginia Code Section 38.2-232, which provides in relevant part: "Every insurer . . . that issues a policy, contract, or plan of insurance . . . shall provide the policy owner, contract owner,

or plan owner with a written notice prior to the date that the policy, contract, or plan will lapse for failure to pay premiums due." Va. Code Ann. § 38.2-232.

On appeal, Russell argues that the trial court erred in finding that Nationwide met its burden of proving that it properly addressed, stamped, and mailed the Past Due Notice, such that it was entitled, under Virginia law, to a presumption of actual receipt by Reagan. She further argues that even if this presumption was proper, her evidence that Reagan did not actually receive the Past Due Notice sufficed to rebut it. Finally, she challenges the court's exclusion of certain testimony.

We begin by laying out the burden-shifting framework that governs proof of compliance with Virginia Code Section 38.2-232. We then address each of Russell's contentions in turn.

A.

Virginia law places the burden on insurers to prove compliance with relevant statutory notice requirements. See Villwock v. Ins. Co. of N. Am., 468 S.E.2d 130, 134 (Va. Ct. App. 1996); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Dixon, 145 S.E.2d 187, 190 (Va. 1965) (explaining that when an insurer asserts the defense of cancellation, it bears the burden of proving effective cancellation of the policy).

11

When, as here, the applicable statute requires notice prior to cancellation but "does not specify mailing as the method of providing notice," an insurance company must prove actual receipt of notice, as opposed to proving merely that notice was mailed in the manner required by statute. Villwock, 468 S.E.2d at 133. However, actual receipt can be demonstrated through the presentation of evidence that the notice was properly addressed, stamped, and mailed, coupled with "application of the presumption that correspondence properly mailed is received by the addressee." Id. at 134 n.4 (citing Washington v. Anderson, 373 S.E.2d 712, 715 (Va. 1988)). Denial of receipt by the addressee does not, alone, overcome this presumption, but instead creates an issue of fact for the fact finder. Hartford Fire Ins. Co. v. Mutual Sav. & Loan Co., 68 S.E.2d 541, 544 (Va. 1952); see also Manassas Park Dev. Co. v. Offutt, 124 S.E.2d 29, 31 (Va. 1962); cf. Wright v. Grain Dealers Nat. Mut. Fire Ins. Co., 186 F.2d 956, 960 (4th Cir. 1950) ("[T]he presumption of the receipt of notice arising from the mailing thereof may be rebutted by testimony of the policy holder that the notice was not received; and when this occurs, the question is for the jury.").

B.

Russell first challenges the district court's determination that Nationwide proved that it properly addressed, stamped, and

12

mailed the Past Due Notice, such that it was entitled to a presumption of actual receipt. She makes two main arguments on this point: first, that the notice was not properly addressed; and second, that Nationwide's computerized evidence was insufficient to establish a presumption of proper mailing. We review Nationwide's compliance with its burden of proof de novo, as a matter of law, but review the court's factual findings underpinning this determination for clear error. See Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 379 (4th Cir. 2001); Stanley v. Hejirika, 134 F.3d 629, 633 (4th Cir. 1998).

1.

Russell first argues that the court improperly found that the Past Due Notice was correctly addressed. As she explains it, there were actually two different addresses on record for Reagan beginning in June 2003: one address for the owner of the policy and another for the payor of the policy. According to Russell, the "owner address" on Reagan's policy, as of June 4, 2003, became "David S. Reagan, P.O. Box 207, Seaford, VA 23696-0207." The "payor address" on file became "David S. Reagan, c/o David Phillips, P.O. Box 207, Seaford, VA 23696-0207" (emphasis added). Russell thus argues that because Nationwide mailed the Past Due Notice to the payor address, rather than the owner address, it cannot demonstrate that the Past Due Notice was

13

properly addressed. Cf. Va. Code Ann. § 38.2-232 (requiring that notice be sent specifically to the policy owner).

We disagree. There is nothing clearly erroneous about the trial court's factual finding that "Reagan's address on record with Nationwide was 'c/o David Phillips, PO Box 207 . . . .'" J.A. 573. Although some letters--as opposed to billing statements--sent by Nationwide to PO Box 207 were addressed directly to Reagan, Russell points to nothing in the record to compel the conclusion that Reagan established different "owner" and "payor" addresses with Nationwide. To the contrary, the policy's billing statements list the "OWNER" address as "Daniel S. Reagan, c/o David Phillips, PO Box 207." J.A. 417, 452. Moreover, Nationwide's record of Reagan's June 2003 change of address reflects that this was the sole requested address of record.

Furthermore, even if Russell were correct that the Past Due Notice should have been sent directly to Reagan at PO Box 207, as opposed to Reagan care of Phillips, the discrepancy is insignificant where the physical address is identical. The addition of the "c/o" element did not change the destination of the Past Due Notice in any meaningful way.[4]

---

[4] Part of Russell's argument is that any deviation from the proper address--even a minor one--is impermissible because Virginia law requires insurers to prove "strict" compliance with
(Continued)

14

Appellant points to a 1919 Virginia case, <u>Wolonter v. United States Casualty Co.</u>, 101 S.E. 58 (Va. 1919), to argue that the addition of "c/o" here rendered the address incorrect. <u>Wolonter</u>, however, does not extend this far.  In <u>Wolonter</u>, the Virginia Supreme Court found that mail sent to "John Wolonter, Roanoke, VA" was not properly addressed when the address on file with the insurance company was "John Wolonter, c/o Virginia Bridge Company, Roanoke, VA."  <u>See</u> 101 S.E. at 59–61.  <u>Wolonter</u> thus stands only for the logical proposition that when the "c/o" element is a vital part of the physical address, mail that neglects the "c/o" element is not properly addressed.  It does not support appellant's argument that mail routed to the proper PO Box is nevertheless misaddressed when it specifies that it is being received care of another individual.

---

section 38.2-232.  This argument appears misplaced, as the cases she cites for this proposition address statutes where all that was required to prove compliance was proof that notice was mailed in the statutorily required manner, rather than <u>actually received</u>.  In such a situation, "strict" compliance with the mailing requirements is clearly mandated.  <u>See</u> <u>Harleysville Mut. Ins. Co. v. Dollins</u>, 109 S.E.2d 405, 409 (Va. 1959); <u>see also</u> <u>Riddick v. State Capital Ins. Co.</u>, 271 F.2d 641, 642–43 (4th Cir. 1959).  However, even accepting Russell's proposition that "strict" compliance is also required for section 38.2-232, we find Nationwide strictly complied with the statutory requirements because, as explained above, notice was sent to the correct address.

2.

Russell also argues that, even assuming the address used was correct, the court below erred by finding that Nationwide's evidence sufficed to establish a presumption of proper mailing. Specifically, she contends that Nationwide's computerized evidence was simply insufficient to prove that the notice was actually stamped and mailed. We are not unsympathetic to her position. By deciding to rely on auto-generated records stored in a computer system, as opposed to the generation and retention of a hard copy of a notice, possibly sent by certified mail, Nationwide has opened itself up to a challenge. However, we find no legal requirement that it take such precautions. Consequently, we find that computerized evidence can, as a matter of law, establish proof of proper mailing if it is sufficiently reliable. Cf. Villwock, 468 S.E.2d at 134 (finding that a showing that an insurance company followed "its regular procedure for mailing notices" supported an inference of proper mailing).

Russell presents two arguments challenging the court's finding that Nationwide's electronic proof of proper mailing was sufficiently reliable. First, she contends that she was improperly required to attack the efficacy of Nationwide's computer system, rather than Nationwide having to prove its reliability. However, the record shows otherwise. At trial,

16

Nationwide presented evidence of how its computer system functioned and offered testimony that there were no reports of any mailing malfunctions during the spring of 2006.

Second, Russell asserts that evidence she presented at trial undermined the conclusion that Nationwide's electronic records were reliable enough to support a presumption of proper mailing. However, the trial court did not err in finding her evidence inadequate to cast doubt on MOBIUS's reliability as of April 10, 2006. Russell presented evidence that Lucas, Reagan's insurance agent, did not receive a carbon copy of the May 2006 Notice of Lapse, even though he typically received such notices and Nationwide's records reflected that he was copied on Reagan's Notice of Lapse. The court determined that this evidence was "of tenuous relevance" to the issue of whether Reagan's Past Due Notice--a different type of notice, sent to a different address--had been properly mailed a month earlier. J.A. 572. Moreover, it found no other evidence that Nationwide's MOBIUS system had a pattern that spring of erroneously showing that documents had been mailed.[5] These

_____

[5] The court did not address Lucas's testimony that he also did not receive notice of the cancellation of Reagan's policy through a "beginning-of-day" report, as was typical. However, without additional evidence explaining the link between this beginning-of-day reporting system and Nationwide's automated record-keeping system, MOBIUS, such testimony also would have been largely unhelpful in determining MOBIUS's reliability.

findings were not clearly erroneous, as Russell's evidence did not speak directly to system lapses similar in type or timing to the one Russell alleged.

Russell also presented evidence that Nationwide's system did not show that a second copy of a letter acknowledging Reagan's June 4, 2003, change of address had been sent, even though a hard copy of the letter was in evidence. Although the trial court did not explicitly consider this evidence in its opinion, its choice not to do so was also not clearly erroneous. Evidence of this possible system lapse in 2003 also would have been of limited relevance, given that it related to a different letter stored in a different computer program. Accordingly, we conclude that the trial court did not err in holding that Nationwide's evidence of proper mailing established a presumption of actual receipt.

C.

Russell next argues that the court erred in finding that she had not rebutted the presumption of actual receipt with adequate evidence that the Past Due Notice was not actually received. Virginia law makes determination of this issue one for the finder of fact, see Hartford Fire, 68 S.E.2d at 544, and so we review the district court's conclusion on this point for clear error, Stanley, 134 F.3d at 633.

18

The court's opinion reflects that it properly considered Russell's evidence of non-receipt, but on balance simply did not find it compelling. It credited Phillips's testimony that he did not receive the Past Due Notice, but weighed this against Phillips's concession that "one of the church's secretaries could have forwarded mail addressed to Reagan without his knowledge and despite his policy." J.A. 574. The court also acknowledged the testimony of the three witnesses whom Reagan told between May and November 2006 that he had a $1,000,000 life insurance policy in place. However, it weighed this evidence against the fact that Phillips personally told Reagan in December 2005 and February 2006 that Reagan needed to begin making premium payments for his policy. It noted that nevertheless, Reagan failed to make any quarterly payments in 2006, including the March payment and two further payments that would have been due had the policy remained in place.

We see no clear error in the court's finding that Russell's evidence did not sufficiently rebut the presumption that Reagan actually received the Past Due Notice. Therefore, we agree with its conclusion that Reagan's policy was effectively cancelled in May 2006.

## D.

Finally, Russell argues that the court erred in disallowing the testimony of Larry Kirk ("Kirk"). Kirk was another

Nationwide policy holder who would have testified that, in July 2006, he found out from his agent that his policy had lapsed even though he had never received any prior notice. We review evidentiary rulings for abuse of discretion. United States v. Caro, 597 F.3d 608, 633 (4th Cir. 2010).

The district court excluded Kirk's testimony because it found this evidence about a different policy too remote in time to have relevance to the issue of whether Nationwide's system malfunctioned with respect to notifying Reagan in April 2006. Russell argues that the bar for relevancy is a low one, and evidence that the computer system malfunctioned at any point might have helped cast doubt on its efficacy during the spring of 2006. However, even if Kirk's testimony might have offered proof of a system malfunction in July 2006 with respect to his own policy, the trial court did not abuse its discretion in determining that this would not help establish that the same type of error occurred in April 2006 with respect to Reagan's policy. See United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994) (explaining that we will find a trial court's evidentiary rulings to be an abuse of discretion only when it acted "arbitrarily or irrationally").

20

III.

For the foregoing reasons, we affirm the opinion of the district court.

<u>AFFIRMED</u>