# CIRCUIT COURT OF FAIRFAX COUNTY

Stephanie Driggers

v.

Colonial Ins. Co., et al.

December 6, 1994

Case No. (Chancery) 134915

BY JUDGE ARTHUR B. VIEREGG, JR.

This action for declaratory relief came before this court upon the demurrer of the defendant, Colonial Insurance Company of California. Both the plaintiff, Stephanie Driggers ("Driggers"), an infant suing by her next friend, Janet Driggers, and Colonial agree that no material facts are in dispute and that this court's resolution of two issues raised by Colonial in its demurrer is dispositive of this case. Accordingly, this court will treat Colonial's demurrer as a motion for summary judgment.

## I. *Facts*

The following undisputed facts frame this legal dispute.

On December 25, 1993, Driggers was a passenger in an automobile owned and driven by the defendant, Karen Todd. Todd lost control of her vehicle, which struck a tree. Driggers sustained serious bodily injuries.

Colonial is the insurer of the Todd vehicle. The policy insuring the Todd vehicle ("Todd Policy") provides liability coverage of $25,000 and uninsured ("UM") or underinsured ("UIM") motorist coverage of an equal amount. Colonial is also the insurer of two vehicles owned by Driggers' father. Each of those policies ("Driggers' Policies") provides for UM/UIM coverage of $25,000.

## II. *Issues*

In her bill of complaint, Driggers principally seeks a declaration:

1. That she is an "insured" under the UM/UIM provisions of the Todd Policy.

2. That she is an "insured" under the UM/UIM provisions of the Driggers' Policies.

3. That the UM/UIM provisions of the Todd and Driggers' Policies are available to satisfy any liability she may establish against Todd.

Colonial contends that Driggers' bill of complaint for such declaratory relief must be dismissed on two grounds. First, because Driggers has not obtained a judgment against Todd establishing Todd's liability, Colonial argues that Driggers' suit is premature. Second, Colonial effectively argues that Driggers is not an insured under the UM/UIM provisions of the Todd Policy because those provisions were intended to protect Todd, her family, and guests against personal injuries (or property damages) caused by uninsured or underinsured vehicles other than Todd's vehicle. The court will address these two contentions in order.

## III. *Decision*

### A. *Colonial's "Prematurity" Argument*

Colonial's prematurity argument, at its core, is the following:

> Driggers . . . fails to allege that she has obtained a judgment against Todd for damages she sustained as a result of Todd's operation of the automobile or that she even has filed an action against Todd. Since Colonial will not be liable under the uninsured/underinsured motorist coverage in any of the three policies at issue until Driggers obtains judgment against Todd, the [B]ill is not ripe and fails to state a claim upon which relief may be granted.

Defendant's Memorandum in Support of Demurrer, at 3.

Colonial bases its argument upon the principle recognized by the Supreme Court of Virginia in *State Farm Mutual Automobile Insurance Company v. Kelly*, 238 Va. 192, 380 S.E.2d 654 (1989), that in a suit between an insurer and its insured related to the UM provisions of its policy, the insurer's liability to its insured does not arise until the insured obtains judgment against the uninsured motorist. *Id.* at 195. In *Kelly*, however, the issue before the Court was whether a UM carrier, State Farm, could be required to pay its entire policy limits to an injured plaintiff

because it paid another insured[1] before the uninsured motorist's liability was established. Relying on its decision in *Midwest Mutual Insurance Company v. Aetna Casualty and Surety Co.*, 216 Va. 926, 929, 223 S.E.2d 901 (1976), the Court (i) confirmed that "legal entitlement to recovery" cannot arise until a judgment establishing liability has been recovered against the uninsured motorist; and (ii) held that State Farm's payment to the Federal Government was therefore a voluntary payment which could not be set off against a later judgment in favor of the injured plaintiff against State Farm in the amount of its UM limits.

The difficulty with Colonial's reliance upon *Kelly*, *Midwest*, and similar cases is that those cases do not preclude a party's obtaining a declaratory judgment to determine whether insurance coverage exists. Other Virginia decisions demonstrate that a suit for declaratory relief is appropriate to adjudicate coverage disputes related to actual insurance claims. *See, e.g., Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 334, 302 S.E.2d 529 (1983); *Criterion Ins. Co. v. Grange Mutual*, 210 Va. 446, 171 S.E.2d 669 (1970).

To adopt Colonial's argument, this court would have to ignore the policies expressed in § 8.01-184 of the Virginia Code as to when suits for declaratory relief may be brought:

> § 8.01-184. *Power to issue declaratory judgments.* — In cases of actual controversy, circuit courts within the scope of their respective jurisdictions shall have power to make binding adjudications of right, *whether or not consequential relief is, or at the time could be, claimed* and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for.

(Emphasis added.) In this case, it may not be disputed that there is an actual controversy. An accident occurred; Driggers was seriously injured; Colonial underwrote one liability policy insuring Todd against liability and three UM/UIM policies which at least potentially insured Driggers against the Todd vehicles' underinsurance. Before the parties can make intelligent assessments of such questions as settlement and the benefits of pursuing litigation, they must be able to determine the amount of existing insurance

---

[1] The insured in this case was the Federal Government. Pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651 *et seq.*, the Government qualified as an "insured" under the policy since it had paid certain portions of the plaintiff Kelly's medical expenses. *Id.* at 194.

coverage available. Indeed, in *Reisen*, the Supreme Court of Virginia sanctioned declaratory relief as to potential coverage despite the fact that the critical factual issue to be litigated in the declaratory judgment proceeding to determine whether or not coverage existed was a material fact in the underlying tort action itself. *Id.*

For the foregoing reasons, this Court rejects Colonial's prematurity argument.

## B. *The Coverage Issue*

The principal issue presented by this case is whether the UM/UIM coverage of the Todd vehicle may be used to calculate the extent to which the Todd vehicle was underinsured at the time of the accident in which Driggers was injured.

Section 38.2-2206 provides the formula for determining whether a motor vehicle is underinsured, and if so, to what extent:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Va. Code § 38.2-2206(B). There is no question that the Todd vehicle was underinsured. The Todd Policy provided $25,000 in liability coverage on the Todd vehicle; the Driggers' Policies together provided $50,000 of UM/UIM coverage to Driggers. Accordingly, in accordance with § 38.2-2206(B), the Todd vehicle was underinsured by at least $25,000.

Driggers, however, contends that the $25,000 UM/UIM coverage on the Todd vehicle should be added to the $50,000 in coverage provided by the Driggers' Policies to determine the total amount of coverage afforded Driggers. Applying the § 38.2-2206(B) underinsurance formula to her figures, Todd's car was underinsured by $50,000. Colonial, on the other hand, contends that the Todd UM/UIM coverage may not be taken into account in determining the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the Todd vehicle. Applying the formula to these figures results in a determination that Todd's car was underinsured by $25,000. Colonial argues that the purpose of the Todd UM/UIM coverage was limited to insuring against

bodily injuries (or property damage) suffered on account of the operation of an underinsured vehicle other than the Todd vehicle.

To determine the statutory intent as to how the § 38.2-2206 underinsurance formula should be applied, this Court must first examine the plain meaning of the language employed by the General Assembly in adopting that formula. More specifically, this Court must determine the plain meaning of the following language in the underinsurance formula cited above:

> the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Va. Code § 38.2-2206(B). ("Total UM/UIM Clause.") It is apparent from this language that the § 38.2-2206(B) formula requires the inclusion of the Todd UM/UIM policy limits in calculating the extent of the underinsurance of the Todd vehicle because Driggers was an "insured"[2] under the Todd UM/UIM coverage and therefore was "afforded" the benefit of the Todd Policy UM/UIM coverage.

The interpretation of the Total UM/UIM Clause advanced by Colonial requires the Court to imply the following underlined language limiting the scope of the Clause to "any person injured but not in the vehicle as a result of the operation or use of the vehicle." Since such limiting language was not included, the implication is that such a limitation was not intended.

Similarly, the sixth paragraph of § 38.2-2206(B) provides that if an insured is covered by more than one UM/UIM policy, a "policy covering a motor vehicle occupied by the injured person" first will be credited with the amount of any available payment (especially payments from liability policies). Va. Code § 38.2-2206(B)(1). This provision is wholly consistent with Driggers' interpretation that the UM/UIM coverage of the Todd Policy must be considered in calculating the extent to which the Todd vehicle was underinsured. Had the General Assembly intended to limit § 38.2-2206(B)(1) to vehicles other than the underinsured vehicle for purposes of extending that credit, it would have expressly done so. Since it did not, the language in § 38.2-2206(B)(1) further corroborates the interpretation of the statute gleaned by its plain language.

---

[2] Colonial does not contest the fact that Driggers was a "guest" in the Todd vehicle at the time of the accident. Section 38.2-2206 defines an "insured" as the named insured under a liability policy, relatives living in the named insured's household, and permissive users and guests in the motor vehicle covered by the policy. Va. Code § 38.2-2206(B).

Although the Supreme Court of Virginia has not confronted this precise one-car accident UM/UIM coverage issue, it has opined as to the General Assembly's policy in enacting the underinsurance provisions contained in § 38.2-2206. In *Nationwide Mutual Insurance v. Scott*, 234 Va. 573, 363 S.E.2d 703 (1988), Justice Poff stated:

> [W]e believe the legislative purpose [of the 1982 underinsurance amendments] was to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists. In paraphrase, the statute as amended provides the insurer to pay a claimant damages caused by the operation of *an underinsured motor vehicle* to the extent *such vehicle* is underinsured, and that, definitionally, *a motor vehicle* is underinsured to the extent that liability coverage on *such vehicle* is less than the uninsured motorist coverage available to the claimant on account of the operation of *such vehicle*.

234 Va. at 577 (emphasis in original). In summarizing this policy, it is significant that Justice Poff emphasized that the UM/UIM coverage to be considered in calculating the extent to which a vehicle is underinsured is the UM/UIM coverage available to the claimant *without regard to the source of that coverage*. Accordingly, the plain meaning of the Total UM/UIM Clause, as well as the interpretation of that Clause by reference to other language in the statute, is wholly consistent with the public policy behind the statute found by this State's highest court.

Both parties have also directed this Court's attention to a decision of the Circuit Court of Richmond, *Shell v. USAA Cas. Ins. Co.*, 28 Va. Cir. 321 (1992). In *Shell*, Judge Hughes held that the UM/UIM coverage of a vehicle involved in a one-car collision should not be considered in calculating whether, and to what extent, that vehicle was underinsured. In interpreting the application of the Total UM/UIM Clause, he reasoned:

> The words "the total amount of uninsured motorist coverage afforded any person injured" does not mean that any uninsured coverage is considered for credit. It means that in determining "underinsured," only that uninsured coverage that is "afforded" is considered, not that of a liability carrier *whose policy would not otherwise be implicated*. It is as if the injury to the plaintiff was brought about by an uninsured driver. The primary obligation to pay this plaintiff's uninsured motorist claim rests with [the injured person's UM/UIM policy], and it is entitled to

credit. This plaintiff would not be entitled to uninsured motorist coverage from [the driver's liability insurer] in a claim of negligence against the Wellborn estate if the Wellborn vehicle was uninsured. The statute is clear but not in the direction plaintiff would go. Moreover, by the very terms of the [driver's] policy, its uninsured motorist coverage is reduced by all sums paid under its liability coverage.

*Id.* at 324 (emphasis added).

Because *Shell* is the only decision addressing the issue before the Court, I have carefully considered it. In the end, I respectfully differ from the conclusions reached in *Shell*, preferring instead to base my decision on the principles of statutory construction set forth earlier in this letter opinion. In reaching this divergent result, however, I readily understand why Judge Hughes reached the decision he did, for my reading of the statute is that in enacting the 1982 underinsurance amendments the General Assembly modified the law in this area more than might otherwise be apparent, with results which appear counter-intuitive when considered in light of prior UM decisions.

The difficulty presented by both *Shell* and the present case is that both involve one-car collisions. If the *Shell* analysis were adopted, one must assume that a passenger-victim of a one-car, underinsured accident may never take advantage of the UIM coverage of the driver. If indeed that is the policy intended by the General Assembly, it is not apparent from the language of the statute. Further, § 38.2-2206(B)(1), as suggested above, would indicate otherwise.

In *Shell*, the court also analogized the underinsured issue before it with a hypothetical uninsured motorist situation, observing that an injured party in a one-car collision could not recover under the driver's UM policy if the driver otherwise had no liability insurance, i.e., were uninsured. The flaws in this analogy, however, would seem to be at least threefold. First, the hypothetical facts assumed present an exceedingly unusual situation and not one from which broader principles should readily be implied: a negligent driver operating an uninsured vehicle while at the same time having UM coverage. Second, as previously discussed, the General Assembly substantially modified the law in the UIM area when it adopted § 38.2-2206, so an analogy to an uninsured motorist situation (and by implication prior uninsured motorist law) is questionable. Third, and finally, no case law is advanced in *Shell* for the result reached; moreover, the logic of the decision appears to be that a liability carrier's policy would not be "im-

plicated" in this situation, an argument which assumes the answer to the issue under consideration by this Court.[3]

For the foregoing reasons, I conclude that Driggers is entitled to entry of a decree declaring:

1. That Driggers is an insured under the Todd Policy and that the UIM coverage of the Todd Policy is available to her to satisfy any judgment returned in her favor as to any cause of action she might have against Todd.

2. That Driggers is an insured under the Driggers' Policies and that the UIM coverages pursuant to those Policies are available to her to satisfy any judgment returned in her favor as to any cause of action she might have against Todd.

3. That the amount of Todd's liability coverage under the Todd Policy shall be credited against Todd's UM/UIM coverage under that Policy.

Driggers is additionally awarded her costs of bringing this proceeding.

---

[3] In *Shell*, the Court noted that the liability policy covering the driver included a provision by which its uninsured motorist coverage would be reduced by sums paid under the liability portion of the policy. In this case, the parties did not introduce the policy provisions.