# CIRCUIT COURT OF ROCKINGHAM COUNTY

Svetlana O. Martirosov
and Alexander Reut,
co-executors of the estate of
Mikhail Surenovich Martirosov,
deceased

    v.

Shenandoah Flight Services, Inc.

Case No. CL02-13021

Svetlana O. Martirosov
and Alexander Reut,
co-administrators of the estate of
Mikhail Surenovich Martirosov,
deceased

    v.

Shenandoah Flight Services, Inc.,
SFS Aircraft, L.L.C.,
and Lorena H. Morris,
personal representative of
the estate of Angelo L. Michael,
deceased

Case No. CL03-00300

Svetlana O. Martirosov
and Alexander Reut,
co-executors of the estate of
Mikhail Surenovich Martirosov

    v.

United States Aircraft Ins. Group,
United States Aviation Underwriters, Inc.,
Shenandoah Flight Services, Inc.,
SFS Aircraft, L.L.C.,
and Lorena H. Morris,
personal representative
of the estate of Angelo L. Michael,
deceased

Case No. CH03-00339

In re Estate of
Angelo Lynn Michael,
Lorena H. Morris,
administrator

Case No. 01-329

March 2, 2004

BY JUDGE JOHN J. MCGRATH, JR.

In order to understand the posture of these cases, it is necessary to provide a brief summary of the fatal airplane crash and ensuing legal maneuvers that gave rise to this litigation.

…On August 14, 2001, Mikhail S. Martirosov was a student pilot aboard an aircraft piloted by flight instructor, Angelo Michael, who was operating within the scope of his employment for his employer, Shenandoah Flight Services, Inc. During the flight, the plane went into an uncontrolled dive or spin which resulted in the death of the two individuals aboard. Shortly thereafter, the Plaintiffs qualified as the Co-Administrators of the deceased student-pilot, Mikhail S. Martirosov.

On September 10, 2002, Plaintiffs filed a Motion for Judgment for negligence and punitive damages with the only Defendant named being Shenandoah Flight Services, Inc. The case was captioned *Svetlana O. Martirosov and Alexander Reut, co-administrators of the estate of Mikhail Surenovich Martirosov, deceased v. Shenandoah Flight Services, Inc.*, CL02-13021 (hereinafter referred to as the "2002 Motion for Judgment" or the "2002 Legal Action"). The *ad damnum* in the 2002 Motion for Judgment was for $803,493.00 in compensatory damages and $800,000.00 in punitive damages. Although Plaintiffs' 2002 Motion for Judgment named only one defendant, Shenandoah Flight Services, Inc., they did assert in their pleading, *inter alia*, that:

> 5. Notwithstanding these duties, Angelo Michael carelessly, recklessly, and with wanton and willful disregard for the safety of plaintiffs' decedent, flew the aircraft so that it crashed. This crash was directly and proximately caused by violations of aviation regulations and of the duties required of Angelo Michael as a certified instructor pilot and pilot-in-command of the aircraft. Angelo Michael was grossly negligent. . . .

(2002 Motion for Judgment, ¶ 5.)

On October 8, 2002, Shenandoah Flight Services, Inc., filed its Grounds of Defense, denying any liability and raising a number of affirmative defenses.

On March 12, 2003, in the 2002 Action at Law, Plaintiffs filed a Motion entitled "Plaintiffs' Motion for Declaratory Judgment." This motion essentially asked the Court for a declaratory judgment to determine what liability insurance coverage limits were available under a policy issued to the Defendant Flight School by the United States Aircraft Insurance Group (hereinafter "USAIG"). The relief requested by the Motion for Declaratory Judgment was for the Court to declare that a policy limitation of "$100,000.00 per passenger" did not apply to Plaintiffs' claims and instead the insurance coverage available was limited only by the $1,000,000.00 per occurrence policy limits.

The Defendant moved to dismiss the "Motion for Declaratory Judgment" on a number of grounds, including, *inter alia*, the failure to name the insurance company, which was an indispensable party. The Motion to Dismiss the Motion for Declaratory Judgment was heard on May 5, 2003, and, from the bench, the Court ruled that the insurance carrier was clearly an indispensable party and hence the prayer for relief could not be granted in the 2002 Legal Action. Thus, a written Order was entered on May 26, 2003, denying Plaintiffs' Motion for a Declaratory Judgment.

Then on July 9, 2003, in the 2002 Legal Action, the Plaintiffs filed a "Motion to Amend the Motion for Judgment and to Add a New Party" requesting leave to add Shenandoah Flight Services Aircraft, L.L.C., and Lorena H. Morris, as personal representative of the Estate of Angelo L. Michael, deceased, as Defendants. Plaintiffs, however, never brought this Motion to Amend on for hearing nor did they tender an endorsed sketch Order. In fact, the Court sent the parties a Notice to Appear on August 4, 2003, for the purpose of re-scheduling the trial date. On that Motions Day, no effort was made by Plaintiffs to present their Motion to Amend, nor did they seek to schedule a hearing on the Motion to Amend. Therefore, on August 12, 2003, the Court entered an Order setting this case for a three day jury trial on June 9, 10, and 11, 2004.

Wholly separate from the pending 2002 Legal Action, Lorena H. Morris, mother of the decedent pilot instructor, Angelo L. Michael, qualified as Administratrix of the Estate of Angelo L. Michael on September 10, 2001, and posted a bond in the penalty of $211,000.00. *In re Estate of Angelo Lynn Michael, Lorena H. Morris, administrator,* (Will Case No. 01-329) (hereinafter "2001 Estate Administration"). The Administratrix filed an Inventory of Decedent's Estate on February 22, 2002. At the request of the Administratrix, a Debts and Demands Hearing pursuant to Va. Code § 64.1-171 was held pursuant to this Court's Order of June 18, 2003, which required publication in the newspaper, which was duly accomplished, and set the hearing for 9:00 a.m. on July 23, 2003. In the 2001 Estate Administration, one claim was made at the hearing, a claim for $4175.97 for a credit card debt by MBNA, and on July 23, 2003, this Court entered an "Order of Distribution of Estate." That Order found that the publication required by Virginia Code § 64.1-179 had been given and concluded that it was:

> Adjudged, Ordered, and Decreed that the Administrator is authorized and directed to pay all administrative expenses and other liens thereon, if any, and then to distribute the Estate of the decedent remaining in her hands to the legatees and distributees thereof without refunding bond therefor. . . .
>
> And nothing further remaining to be done herein, it is Ordered that the above-captioned case be stricken from the docket of the Court and shall be filed among the ended causes.

On July 24, 2003, the Administratrix, Lorena H. Morris, filed a "Statement in Lieu of Settlement of Account for Decedent Estate Pursuant to Virginia Code § 26-20.1," in which she stated that she was the sole distributee of the estate and:

That the residue of the estate has been delivered to the distributees and beneficiaries.

On November 30, 2003, David J. Hatmaker, Commissioner of Accounts for Rockingham County filed his certificate stating that the Administratrix had filed her Statement in Lieu of Settlement of Account Pursuant to Virginia Code § 26-20.1 and recommending that it be accepted in lieu of a formal detailed settlement of the accounts of the Administratrix.

Then, on August 5, 2003, Plaintiffs filed the 2003 Action at Law as a new and completely separate action. The Motion for Judgment in the 2003 Legal Action makes the same essential allegations as contained in the 2002 Legal Action. The principal difference between the 2003 Legal Action and the 2002 Legal Action was the addition of SFS Aircraft, L.L.C., and Lorena H. Morris, as personal representative of the Estate of Angelo L. Michael, deceased, as defendants.

On August 5, 2003, the Plaintiffs also filed a Bill of Complaint in Equity asking for a Declaratory Judgment that the U.S. Aircraft Insurance Group insurance policy provided a maximum coverage of $1,000,000.00, which would be available to pay Plaintiffs' judgment when, as, and if such a recovery was had. The style of the Declaratory Judgment action is *Svetlana O. Martirosov and Alexander Reut, co-executors of the estate of Mikhail Surenovich Martirosov, deceased v. United States Aircraft Ins. Group,* (CH03-00339) (hereinafter the "2003 Equity Action").

At this point, the 2003 Law Action and the 2003 Equity Action are before the Court on various motions for summary judgment, demurrers, Pleas in Bar, and Motions to Dismiss filed by certain of the Defendants. The 2003 Equity Action will be dealt with first.

## I. *2003 Equity Action for Declaratory Judgment (Case No. 03-00339)*

A. *May a declaratory judgment be obtained by a claimant against an insurance carrier prior to obtaining judgment against the tortfeasor?*

On January 7, 2004, the Plaintiffs moved for summary judgment under Rule 3:18 on its Motion for Declaratory Judgment. Similarly, United States Aircraft Insurance Group (USAIG) and United States Aviation Underwriters, Inc. (USAU) (hereinafter collectively referred to as "USAIG") also filed a cross-motion for summary judgment in the equity action. The Plaintiffs' Motion for Summary Judgment basically argues that "passenger" is not defined in the liability portion of the insurance policy

covering Plaintiff's action and, as a matter of common sense interpretation of the policy, a "student pilot" cannot be considered a "passenger."

On the other hand, the USAIG Defendants assert that they are entitled to summary judgment because, *inter alia*, the Plaintiffs have not reduced their claims against the tortfeasors to judgment; therefore, they have no standing to bring an action against the insurance carrier. USAIG also moves, in the alternative, for summary judgment on the merits because they claim the language of the insurance policy is clear on its face and entitles them to judgment as a matter of law.

An attorney for Defendant, Lorena H. Morris, the personal representative of the estate of Angelo L. Michael, deceased, entered a special appearance pursuant to § 8.01-277 and filed a Demurrer and Plea in Bar. The gravamen of Mrs. Morris' defensive pleading is that there is no justiciable controversy between her and the Plaintiffs relating to insurance coverage provided by USAIG to the other Defendants and, because she had closed the administration of decedent's estate and distributed all of its assets prior to the filing of this suit, she as Administratrix is not a proper party to this action.

The insurance company defendants argue that the Plaintiffs do not have a right to bring this proceeding because it has not shown an "actual controversy" or a "justiciable controversy" exists between the parties, as is required under Virginia Code § 8.01-184, *et seq.* USAIG further argues that the only direct action permitted by an injured party against an insurance company who has insured the tortfeasor is one which arises under § 38.2-2200 and that this type of suit may be brought only after the plaintiff has obtained a judgment against the insured tortfeasor and had it returned unsatisfied.

USAIG reliance on § 38.2-2200 is misplaced. This provision in the Virginia Code simply mandates that liability policies issued in the Commonwealth contain a contract provision providing that a direct action may be brought against the insurance carrier by the injured party if the injured party has obtained a judgment against the insured party which has been returned as unsatisfied. Section 38.2-2200 of the Code does not expressly limit other lawsuits, which may be brought by or against insurance companies. In fact, insurance companies are quite frequently either Petitioners or Respondents in declaratory judgment actions to determine coverage issues. See, *e.g., Montgomery Mutual Ins. Co. v. Riddle*, 266 Va. 639 (2003); *Government Employees Ins. Co. v. Moore*, 266 Va. 155 (2003); *Southern Ins. Co. v. Williams*, 263 Va. 565 (2002); *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38 (2001); *Superior Ins. Co. v. Hunter*, 258 Va. 338 (1999); *Lexie v. State Farm Mutual Automobile Ins. Co.*, 251 Va. 390, 469 S.E.2d 61 (1996); *Reisen v. Aetna Life & Casualty Co.*, 225 Va. 206 (1989).

However, it is interesting to note that, in Virginia, there appears to be little discussion in the case law on the issue of whether a *claimant who is not an insured* may bring a declaratory judgment to determine the existence or scope of insurance coverage available to a defendant tortfeasor. The general rule in the United States, according to *Appleman on Insurance Law and Practice* (2d ed.), § 142.1, is stated as follows:

> The injured party generally has standing to bring a direct action against the insurer for a declaratory judgment concerning coverage, even though the liability action against the insured has not been liquidated in any way. The injured party's interest in the coverage issue is legally sufficient to support standing to seek a declaratory judgment, even though there is no judgment against the insured because of the injured party's right, under either the case law of the state or the state's direct action statute, to sue the insurer directly after obtaining a judgment against the insured.

*Id.* at § 142.1(C).

There is a Bankruptcy Court decision, *In re Thomas H. Dameron*, 213 B.R. 482 (Bankr. E.D. Va. 1997), on which USAIG relies applying Virginia law in which the Bankruptcy Court indicated that Virginia did not allow a direct suit against an insurer by a claimant and then noted:

> In addition, most states which have considered the issue have not allowed a third-party claim against the insurer of an adverse party in the absence of a specific statutory provision. See *Wilson v. Wilson*, 121 N.C. App. 662, 665, 468 S.E.2d 495, 497 (1996) (citing cases from a majority of jurisdictions). Of the cases cited by the Nations Title defendants in support of their argument, most focus on the rights of the *insured*, not of a third party, to bring an action against the insurer. See, e.g., *Aetna Cas. & Sur. Co. v. Price*, 206 Va. 749, 146 S.E.2d 220 (1966). In the cited cases in which the court did grant a third party an independent right to proceed, a statute from a jurisdiction other than Virginia or another non-applicable statute controlled the outcome. See, e.g., *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 85 L. Ed. 826, 61 S. Ct. 510 (1941) (applying an Ohio statute which granted a right to proceed against an insurance company that failed to satisfy a judgment within thirty days); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986) (applying the Federal Declaratory Judgment Act, 28 U.S.C. § 2201).

Lack of standing to bring a cause of action is a threshold issue that warrants dismissal.

*In re Thomas H. Dameron*, 213 B.R. 482 (Bankr. E.D. Va. 1997).

However, all of the authority relied upon by the Bankruptcy Court in *In re Thomas H. Dameron, supra,* including the case on which it most heavily relies, *Wilson v. Wilson*, 121 N.C. App. 662, 468 S.E.2d 495 (1996), stand for the well accepted principal that a claimant may not sue a tortfeasor's insurance carrier for breach of a duty of good faith or for the violation of a state law against unfair dealing or unfair trade practices. None of the authority supports a broad proposition that a non-insured claimant may never bring a declaratory judgment against a tortfeasor's insurance carrier concerning the limits of coverage.

In fact, the recent case of *USAA Casualty Ins. Co. v. Randolph*, 255 Va. 342 (1998) (hereinafter "USAA") is quite instructive on this issue. In *USAA*, Randolph was shot by a gun being handled by Morton, a co-worker, while both were on the employer's parking lot after ending their shift. Randolph, fearing that Morton would raise the workers' compensation bar in his personal injury action, filed a declaratory judgment against USAA, the insurer of Morton's automobile.

Although the Supreme Court overturned the trial court's grant of a declaratory judgment that the accident was not in the course of the employer's business and was not covered by the workers' compensation bar, the Supreme Court never suggested that a claimant could not bring a declaratory judgment against an insurer. Instead, the Supreme Court reasoned that the authority to issue a declaratory judgment is discretionary "and must be exercised with great care and caution" (255 Va. at p. 346), and that it was not appropriate when the declaratory judgment action could possibly decide a factual question, *i.e.* whether the accident arose in the course of Morton's employment, that should be decided by a jury or a court in a tort action. *Id.* at pp. 346-48.

Two years later the Supreme Court of Virginia seems to have effectively put to rest the issue of whether a non-insured claimant could bring a declaratory judgment against an insurance carrier. In *Craig v. Dye*, 259 Va. 533 (2000), the Supreme court had before it a declaratory action brought by the personal representative in a wrongful death action seeking a declaration that the defendant was a covered insured under his parents' automobile policy. The trial court ruled that the insurance policy did not cover the defendant driver, and the plaintiff took an appeal to the Supreme Court. The Supreme Court reversed, holding that the insurance carrier had coverage on the claim.

Although the Supreme Court did not discuss the appropriateness of a declaratory judgment by a non-insured claimant, it had no trouble granting

the declaratory relief requested in this suit. The Supreme Court accepted as appropriate in these circumstances the use of a declaratory judgment action by a claimant to resolve coverage issues. The fact that the parties may not have objected to the proceeding is of no moment because the parties by consent cannot create a justiciable controversy where one does not exist. See *Vest v. Kerr*, Record No. 010232 (Va. 2001) (where no party objected to lack of an actual controversy and issue raised for the first time by Supreme Court at oral argument, case dismissed for want of an actual controversy). In addition, the Fourth Circuit Court of Appeals has held that an injured claimant may bring an action to determine whether the carrier was obligated for coverage of $50,000.00 or $2,000,000.00. *White v. Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990) (applying Virginia law). See, *Hall v. Dove*, 40 Va. Cir. 225 (Nelson County, 1996); *Omni Ins. Co. v. Pannell*, 41 Va. Cir. 37 (City of Norfolk, 1996); *Driggers v. Colonial Ins. Co.*, 35 Va. Cir. 288 (Fairfax County, 1994).

The dispute raised by the 2003 Equity Action is an actual controversy between antagonistic interests concerning insurance coverage, and its resolution in this proceeding will avoid the possibility of post-judgment litigation and will provide the parties with a clear understanding of what coverage is available for settlement purposes.

Therefore, the Court will determine the merits of the declaratory judgment action.

### B. *Merits of Declaratory Judgment Action*

The airplane which was involved in this crash was covered by USAIG 400 All-Clear Aircraft Policy (Policy No. 400AC-38402) and Endorsement No. 7. The Policy appears to be one of those chatty "plain language" contracts which contains no formal definition section. It expresses the liability coverages available as five options, any one of which may be selected by insured. The coverage options are stated as:

#### YOUR LIABILITY COVERAGE

Following is a description of your coverage under this policy for liability claims made against you. Check your Coverage Summary page to see which coverage you have.

***Combined coverage for bodily injury and property damage.*** If you have this coverage, we'll pay claims for bodily injury, mental anguish, and damage to someone else's property, resulting from the ownership, maintenance, or use of the aircraft.

172

***Combined coverage for bodily injury (except to passengers) and property damage.*** If you have this coverage, we'll pay claims for bodily injury and mental anguish and damage to someone's property resulting from the ownership, maintenance, or use of the aircraft, except bodily injury and mental anguish claims by a passenger in your aircraft. A passenger is anyone who enters your aircraft to ride in or operate it.

***Coverage for bodily injury to anyone but passengers.*** If you have this coverage, we'll pay claims for bodily injury and mental anguish to anyone, except a passenger, who is injured resulting from the ownership, maintenance, or use of your aircraft. A passenger is anyone who enters your aircraft to ride in or operate it.

Two limits apply to this coverage. The "each person" limit, which is the most we'll pay for injury to any one person resulting from any one occurrence including damages for care and loss of services. And the "each occurrence" limit, which is the most we'll pay in any one occurrence no matter how many people or organizations are involved.

***Coverage for bodily injury to passengers only.*** If you have this coverage, we'll pay claims for bodily injury and mental anguish to any passenger in your aircraft who is injured resulting from the ownership, maintenance, or use of the aircraft. A passenger is anyone who enters your aircraft to ride in or operate it.

Two limits apply to this coverage. The "each person" limit, which is the most we'll pay for injury to any one passenger resulting from any one occurrence including damages for care and loss of services. And the "each occurrence" limit, which is the most we'll pay in any one occurrence no matter how many people are involved.

***Coverage for property damage.*** If you have this coverage, we'll pay claims for damage to someone else's property resulting from the ownership, maintenance, or use of the aircraft.

(USAIG 400 All Clear Aircraft Policy, p. 2 (bold letting in original).)

The defendant flight school chose the first option of "Combined Coverage for Bodily Injury and Property Damage." This is reflected on page 2 of 2 of the Coverage Summary Page of Policy No. 400AC-38402, which reads in pertinent part:

| Coverage · | Limits of Coverage |
|---|---|
| Combined Liability Coverage for bodily injury and property damage subject to a maximum of Personal Injury | $100,000.00 Each Passenger $1,000,000.00 Each Occurrence and aggregate |

The Plaintiffs argue that the "Combined Coverage for Bodily Injury and Property Damage" coverage clause, which is the broadest of coverages, contains no definition of "passenger." Therefore, Plaintiffs argue, when applying the limits of coverage section on the endorsement page, the "$100,000.00 each passenger Limit of Coverage" must be interpreted in its common and accepted meaning, *i.e.*, someone who is riding in the plane and not a pilot or student pilot.

Plaintiffs concede that three coverages, *i.e.* "Combined Coverage for Bodily Injury (except to Passengers) and Property Damage"; "Coverage for Bodily Injury to Anyone But Passengers"; and "Coverage for Bodily Injury to Passengers Only," contain a definition of passenger which reads: "A passenger is anyone who enters your aircraft to ride in or operate it." However, they argue that, since such a definition is not included in the liability coverage option they chose, this definition of "passenger" cannot be used to define the term "passenger" in the Limits of Coverage clause chosen by the Flying School.

It is well established in Virginia jurisprudence that if there is an ambiguity in an insurance policy, the contract will be strictly construed against the drafter of the contract, *i.e.*, the insurance company. See, *e.g.*, *White Tire Distributors, Inc. v. Pennsylvania Nat'l Mutual Ins. Co.*, 235 Va. 439 (1988); *CUNA Mut. Ins. Soc. v. Norman*, 237 Va. 33 (1989); *Hill v. State Farm Mut. Ins. Co.*, 237 Va. 148 (1989). See also, Michie's Jurisprudence, *Insurance*, § 25. Similarly, when there is an ambiguity in an insurance contract, it will be interpreted in a reasonable way that will provide coverage as opposed to restricting coverage. See, *e.g.*, *American Reliance Ins. Co. v. Mitchell*, 238 Va. 593 (1989); *State Farm Mut. Auto. Ins. Co. v. Manojlovic*, 215 Va. 382 (1974); *Jefferson Pilot Fire & Cas. Co. v. Boothe, Pritchard & Dudley*, 638 F.2d 670 (4th Cir. 1980).

The first question to be addressed is whether there is an ambiguity in the policy. The only liability insurance chosen by the flight school was the following:

> Combined coverage for bodily injury and property damage. If you have this coverage, we'll pay claims for bodily injury. ... resulting from the ownership, maintenance, or use of the aircraft.

The only limit on that coverage set forth in the policy was that payments were limited to:

> the maximum of: $100,000.00 Each Passenger $1,000,000.00 Each Occurrence and aggregate.

Reading these two provisions together, they do not create an ambiguity. The meaning of the words "maximum," "each," "passenger" and, to a lesser extent, "occurrence," have a well understood meaning in the English language.

For example, the *Oxford Compact English Dictionary* (2003) defines "passenger" as:

> A person traveling in a vehicle, ship, or aircraft other than the driver, pilot, or crew.

The Oxford Dictionary and Thesaurus (Am. Ed.) (1996) defines passenger as:

> A traveller in or on a public or private conveyance (other than the driver, pilot, crew, etc.).

The American Heritage Dictionary of the English Language (4th Ed. 2003) defines "passenger" as:

> A person who travels in a conveyance, such as a car or train, without participating in its operation.

Similarly, *Webster's New World Dictionary* (3d Ed. 1991) defines "passenger" as:

> A person travelling in a train, bus, boat, automobile, etc., esp. one not involved in operating the conveyance.

In short, there seems to be no ambiguity in the term "passenger" because there is no question that a pilot, co-pilot, or student-pilot could not in any sense be considered to be a "passenger." The only way that an "ambiguity" is suggested is that three of the five liability coverages offered, but not the one selected by the Flight School, defined "passenger" as "anyone who enters your aircraft to ride in or operate it."

There is no question that parties to a contract can define terms in any way they care (*e.g.*, mammals can be defined to include birds or vertebrates can be defined to include invertebrates). However, when a word is used in a way which deviates dramatically from its normal meaning, care must be used by the draftsman to specify precisely when the word is being used as an artificial construct and when it is being used in its normal sense. In three of the liability coverages offered by USAIG, the insured defined "passenger" in an extremely non-traditional way, *i.e.*, to include pilots and student pilots. This is the insurance company's right. However, when using such a non-traditional definition, the drafter must make certain that the definition is included in each place it is meant to apply. This is often done by use of a Definition Section in a contract of insurance. USAIG for reasons best known to itself chose not to use a definition section in this contract; thus, when not specifically defined in the policy they are bound to the usual definition of terms found in the contract they have drafted. See, *Hill v. State Farm Mutual Automobile Ins.*, 237 Va. 148, 152 (1989); *Insurance Co. v. Dollins*, 201 Va. 73, 77 (1959). A number of cases from other jurisdictions have held that in interpreting insurance policies, the term "passenger" is not ambiguous. *E.g.*, *Loomer v. M.R.T. Flying Service, Inc.*, 558 A.2d 103, 105-07 (Pa. Super. 1989); *Griffith v. Continental Casualty Co.*, 506 F. Supp. 1332, 1336-37 (N.D. Tex. 1981) (held the term "passenger" was not ambiguous); *Morgan v. Continental Casualty Co.*, 382 So. 2d 351, 352 (Fla. Dist. Ct. App. 1980) (held the term "riding as a passenger in an aircraft" was not ambiguous); *Paul Revere Life Ins. Co. v. First Nat'l Bank*, 359 F.2d 641, 643-44 (5th Cir. 1966), distinguished on other ground in *Ranger Ins. Co. v. Estate of Mijne*, 991 F.2d 240, 243 (5th Cir. 1993).

The only argument advanced by USAIG for their construction of the All Clear Policy is that the term "passenger" is defined in three of the five levels of coverage they offer in the All Clear Policy and because the type of coverage, "Combined Coverage for bodily injury and property damage," chosen by the flying service was the most inclusive coverage offered, the definitions used in the lesser coverages should be read into this coverage. Secondly, USAIG argues that the First Circuit Court of Appeals in *USAIG v. Fitchburg-Leominster Flying Club, Inc.*, 42 F.3d 84 (1st Cir. 1994), interpreted a nearly identical contract in the way advanced by USAIG in this case.

The Court is aware of the well accepted principal that contracts, including insurance policies, should be read as a whole, and individual words and phrases should not be isolated and taken out of context. See, *e.g., Sully Station II Community Ass'n v. Dye*, 259 Va. 282, 284 (2000); *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153 (1993); *Berry v. Klinger*, 225 Va. 201 (1983); *Hale v. Hale*, 42 Va. App. 27 (2003). However, there is nothing in the USAIG 400 All Clear Policy which suggests that definitions used in describing other coverages which were not selected by the insured should be imported into the coverage actually chosen. In fact, the clear omission of such a definition in one form of coverage when it is used in other coverages suggests that the deletion of the definition was intentional and significant. This is particularly true where the definition used ("passenger" to include pilots and co-pilots) is so strained and counter-intuitive. It also must be noted that the five types of liability coverage offered by the policy are separately stated. Because the insured only chooses one of the five levels of coverage, there is no reason that the insured should or would read definitions in the contract which do not apply to the coverage it has chosen.

USAIG at other places in its contract used the terms "passenger," "pilot," and "student pilot" in their normally accepted usage. This is a clear indication that the unusual definition of "passenger" found in one part of the policy was not to be read into the policy as a whole. For example, one section of the policy states:

> Air Taxi Commercial use means in addition Non-Commercial use you may charge for using the aircraft to transport *passengers or freight only*.

Policy at p. 2 (emphasis added). In another section, the USAIG policy states:

> We will pay all reasonable medical expenses that *passengers, pilots, and crew members*, including you, incur within one year from the date of an accident.

Policy at p. 5 (emphasis added).

In yet another section of the policy, it is stated that the policy does not provide liability coverage for claims against: "*Any student pilot or renter pilot.*" Policy at p. 3 (emphasis added). All of these references to "passenger" and "pilots" and "student pilots" make no sense if the artificial definition of "passenger" found in liability coverages Nos. 2, 3 and 4 was to be read into the rest of the policy.

The reasoning of the Supreme Court in *Hill v. State Farm Mutual Automobile Ins. Co.*, 237 Va. 148 (1989), is instructive. In reviewing a Circuit Court's declaratory judgment that the statutory definition of "moped" had to be read into an insurance policy, the Supreme Court stated:

> An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction. *See Insurance Co. v. Dollins*, 301 Va. 73, 77, 109 S.E.2d 405, 409 (1959). The policy contains no indication to the insured that cross-reference must be made to provisions scattered through the Code of Virginia in order to determine the meaning of the seemingly unambiguous term "motor vehicle."

*Id*. at p. 152.

Similarly, there is no indication in any part of the policy that the strained definition of passenger found in liability coverages No. 2, 3, and 4 on page 2 of the Policy were to be read into any or all other sections or subsections of the policy.

Lastly, this Court must note that it has great respect for the jurisprudence from the First Circuit Court of Appeals; however, its holdings on interpreting Massachusetts's contract law are not binding on this Court. In *USAIG v. Fitchburg-Leominster Flying Club, Inc.*, 42 F.3d 84 (1st Cir. 1994), the main issue before the court was whether the deceased, who had been riding as a passenger in the aircraft, was still a passenger when she alit from the aircraft and was assisting in tying the aircraft down when she was killed by the aircraft's propeller. In reaching its decision on this case, the First Circuit did consider whether the absence of a definition of "passenger" in the "Combined Coverage for bodily injury and property damage" had an effect on the amount of coverage available. It disposed of the whole issue in a footnote 3 to its opinion, in which the Court stated:

> We, like appellee, do not consider it important that the combined liability coverage option selected does not itself contain this definition of passenger, which is given in several of the more narrow categories of coverage listed. Since the combined liability coverage is merely an amalgam of the risks covered by the narrower categories, by implication, the same definition of passenger applies.

*Id*. at 85, n. 3.

With all due respect, I find this reasoning to be unpersuasive and the conclusion reached unsound. There is nothing in this insurance policy to inform a reader or purchaser that the definitions used in one type of

coverage were to be used in all of the other available coverages. The fact that the coverage chosen was captioned "Combined Coverage for bodily injury and property damage" does not alert anyone to the fact that it purports to be a "combination" of the other coverages, including their definitions, but would logically be read to be a "combination" of "bodily injury and property damage" coverage.

If the insurer had wanted to put its overly expansive definition of passenger in the contract, it could have (i) put a "Definition" Section in the contract; (ii) put a definition of "Passenger" in the Combined Coverage section; or (iii) simply provided that Combined Coverage includes all of the coverages provided by Option No. 2, "combined coverage for bodily injury (except to passengers) and property damage," and Option No. 4, "coverage for bodily injury to passengers only."

Having reviewed the contract and the applicable law, I cannot find any ambiguity in this contract. The coverage provided is for "bodily injury," and the only limit on that coverage is found in the endorsement page and that coverage is $100,000.00 per passenger and $1,000,000.00 per occurrence. There is no definition provided for the term "passenger" in this coverage or policy limit, and as a matter of law "passenger" as used in the limit of liability section cannot be read to include a pilot or student-pilot.

The Court is also aware that Defendant, Lorena Morris, the Personal Representative of the Estate of Angelo L. Michael, has demurred to this action on the grounds that the Estate has been closed and, because no claim was made at the Debts and Demands Hearing, she is immune to the suit. In addition, she argues there is no controversy between her and Plaintiffs concerning the issue of insurance coverage. The estate law issues will be discussed in more detail in the disposition of the 2003 Law Action, discussed *infra*. However, assuming without deciding that the Estate may be sued through her as Administratrix, she is a proper party to this suit. Her decedent was an instructor pilot employed by Shenandoah Flight Services, Inc. The policy at issue provides:

**Who's covered**

Besides you, certain other people and organizations are also covered under Your Liability Coverage. The words *you* and *your* throughout this section, also include these other people and organizations.

They are. ... Any of your employees or directors working or acting within the scope of their duties.

Policy at p. 3.

Therefore, if there is coverage under this policy, the decedent was an insured under this policy and the Administratrix of the estate would obtain the same coverage of the others and all parties would be bound by this decision. Therefore, Lorena Morris, as personal representative, is not dismissed from this Declaratory Judgment action and her Demurrer is overruled.

Counsel for Plaintiffs are directed to prepare an Order for entry in Case No. CH03-00339 holding that, if there is coverage under Policy No. 400AC-38402, the only limit on that coverage is the $1,000,000.00 per occurrence limit found in Endorsement No. 2.

## II. *The 2003 Legal Action*
### (Case No. CL03-00300)

The 2003 Legal Action is before the Court on Lorena H. Morris, Administratrix's "Demurrer, Plea in Bar, and Motions to Quash Service and to Dismiss," which was filed on September 26, 2003, and oral argument held on January 22, 2004. The basis of the Defendant Morris' pleading is:

A. The Court lacks subject matter and personal jurisdiction over the person of Lorena Morris; because of the pendency of the 2002 Legal Action, the 2003 Legal Action is an impermissible form of splitting their cause of action and thus a nullity and void *ab initio*;

B. That the Estate of Angelo L. Michael was closed on July 23, 2003, and because Plaintiffs had not filed a notice of claim, suit cannot be brought against Lorena Morris, Administratrix.

C. The claims are barred by the statute of limitations.

On the motion of Defendant, Morris, the estate records in *Estate Administration of Angelo L. Michael*, Will Case No. 01-379, were incorporated into the 2003 Legal Action by Court Order dated November 3, 2003.

### A. *Is plaintiffs' 2003 legal action barred by Rule 1:8?*

Defendant Morris relies principally upon *Mechtensimer v. Wilson*, 246 Va. 121 (1993), for the proposition that an action filed in violation of Rule 1:8 is a nullity. This, Defendant Morris argues, is a corollary of the rule that a plaintiff may not split a cause of action and because plaintiffs had already had one action pending, they cannot commence a second lawsuit on the same cause of action.

The status of the rule against splitting a cause of action in Virginia is fairly set forth in Michie's Jurisprudence, *Actions*, §§ 14-16, where it is stated:

> *General Rule.* It is well established that a plaintiff cannot be allowed to sever one cause of action and carve two suits out of it. It is not merely the right, but the duty, of the plaintiff to present his whole case in the one suit.
>
> The rule prohibiting the splitting of causes of action is for the benefit of the defendant. It exists for his protection, and is intended to suppress serious grievances, to prevent vexatious litigation, and to avoid the costs and expenses incident to numerous suits on the same cause of action. The defendant should not be subjected to the hazards and vexations of two suits for one and the same cause. . . .
>
> A defendant may waive or renounce the benefits of the rule prohibiting the splitting of causes of action by either expressly or impliedly consenting to the institution of separate actions on a single demand or cause of action, and such a waiver will be presumed unless timely and proper objection is made.

*Id.* pp. 184 and 188 (footnotes omitted).

In this case, the Defendant Morris is not named in two lawsuits on the same cause of action. She is named as a defendant only in the 2003 Legal Action. The defendant who is named in both suits, Shenandoah Flight Services, Inc., has made no objection to the second suit being filed, but has instead filed a Grounds of Defense in the second suit and waived any objection to the alleged splitting of a cause of action. *E.g., Bill Greever Corp. v. Tazewell Nat'l Bank,* 256 Va. 250 (1998). Therefore, because Defendant Morris is not named in two law actions and is, therefore, not subjected to vexatious litigation, she has no standing to complain of Plaintiffs' "splitting" their cause of action against Shenandoah Flight Services, Inc.

Rule 1:8 is not applicable in this case, and, thus, *Mechtensimer v. Wilson,* 246 Va. 121 (1993), does not come into play. There was no Amended Motion for Judgment filed in the 2002 or 2003 Legal Actions; the 2003 Legal Action was a new lawsuit filed against one previously named defendant and two new defendants. Although this is an odd and wasteful way to try to protect against the running of a statute of limitations given the fact that Plaintiffs had already moved to amend their Motion for Judgment and to add additional parties in the 2002 Legal Action, the problems created can be solved by joinder, consolidation, and/or a nonsuit.

Therefore, Defendant's Morris' Demurrer and Motion to Dismiss or otherwise terminate the 2003 Legal Action on these grounds is overruled and denied.

B. *May the administratrix of the estate be sued after the funds have been distributed and the estate "closed"?*

The Administratrix's first argument is that, once the Debts and Demands Hearing pursuant to § 64.1-179 of the Code of Virginia had been concluded and all known creditors paid and the estate distributed to the sole distributee, *i.e.*, Lorena Morris personally as the surviving mother of the decedent, Angelo L. Michael, there was no Administratrix to be sued. Secondly, she argues that any claim not presented at the Debts and Demands hearing is forever barred once the estate is "closed." The Administratrix relies principally upon the Supreme Court cases of *Nicholas v. Nicholas*, 169 Va. 399 (1937) (hereinafter "Nicholas"); *Johnston v. Commonwealth*, 117 Va. 506 (1915) (hereinafter "Johnston"); and *Carter's Admr's v. Skillman*, 108 Va. 204 (1908) (hereinafter "Carter's Admr's").

Initially, it should be noted that Virginia is unique in that it is one of the few states in which an estate may stay open for indefinite period. Thus, as stated in Michie's Jurisprudence, *Executors and Administrators*, § 36:

> In the Virginia probate law and practice, the powers of a personal representative of a decedent do not come to an end automatically upon settlement of final accounts or in any other event; nor are they, as they are in many other jurisdictions, terminated by the entry of an order of discharge. There is no such thing as an order declaring the estate fully administered and discharging the personal representative from further duties and responsibilities. In this respect, a fiduciary acting as personal representative of a deceased person's estate is wholly unlike other fiduciaries. His continued possession of his plenary powers indefinitely may be characterized as unique. The effect of a full and final settlement of his accounts is, in time, of course, to discharge him from responsibility for the assets properly received and administered. However, he is still administrator and still has the right and duty to collect and administer any assets which may be afterwards discovered.
>
> This right is brought out by the Virginia statute that provides that an executor and administrator who has completed the distribution of the estate with the exception of transferring certain

assets may file with the clerk of the court a petition describing such assets, reciting that all debts of the decedent have been paid and that a final accounting has been filed and approved, and the clerk should issue a certificate certifying that the powers of such executor or administrator continue in full force and effect.

(Footnotes omitted.)

Therefore, it is clear that even after her distribution of the estate assets, Lorena Morris did and still does continue as the Administratrix of the Estate of Angelo L. Michael. See, *e.g., First Nat'l Exchange Bank v. Seaboard Citizens Nat'l Bank*, 200 Va. 681, 686 (1959); *Grinels v. Legg*, 208 Va. 63, 66 (1967). That leaves the question of whether the suit is barred because no claim was lodged at the Debts and Demands Hearing and the estate has been distributed.

The procedure for the Settlement of Accounts and Distribution by Personal Representatives is set forth in §§ 64.1-171 to 64.1-180.1 of the Code of Virginia and has remained fairly consistent since its original enactment in 1849. The statutory procedure assures creditors that notice will be given and a hearing be held to determine the creditors which will be paid from the funds being collected and held by the personal representative. This gives assurance to creditors that they will have an ability to collect their debts before the funds in the estate are disbursed.

Similarly, the debts and demands procedure gives the Administratrix an assured means of settling her accounts and protecting her *from personal liability for her actions as an Administrator* if it turns out that there were creditors who were not paid or legatees or devisees who did not receive their proper distribution.

The *Carter's Adm'r, supra, Johnston, supra,* and *Nicholas, supra,* cases stand for that proposition. *Carter's Adm'r,* for example, involved a suit by plaintiffs asserting they were the rightful devisees who brought suit against the Sheriff of Loudoun County, who was the Administrator of the estate, to pay to them the sums which had previously been paid to the Defendant, Edwin J. Carter, who had originally been thought to be the proper sole distributee. The estate had been settled in 1894, and the action attacking it was commenced in 1903. The *Carter Adm'r* case holds that the trial Court's order for the Sheriff as Administrator to pay the misapplied distribution to the Plaintiffs was in error because the debts and demands procedures protected the Administrator against claims by omitted heirs as well as creditors. This case does not hold that the funds once disbursed to a legatee or heir and in the hands of such person are not liable for claims against the estate by a creditor. Indeed, the Supreme Court in *Carter's Adm'r* notes the provision in the debts and demands procedure, which provides "but

every legatee or distributee to whom any such payment or delivery is made and his representatives may in a suit brought against him within five years afterwards be adjudged to refund a due proportion of any debts or demands appearing against the decedent, and the costs attending their recovery." 108 Va. at 213. There was no need for the Court in *Carter's Adm'r* to discuss this section any further because the action against the legatee had been commenced nine years after the settlement of the estate. Similarly, the Court in *Johnston, supra,* and *Nicholas, supra,* were dealing with the question of whether the Administrator may be held personally liable for acts as an Administrator not whether a suit may be brought against a decedent's estate.

In this suit, there is no claim against Lorena Morris personally or individually. She is being sued as the Administratrix of an estate for a claim against the decedent and the decedent's estate. The debts and demands process does not bar a claim that was not filed; it simply provides that the estate may be disbursed and thus made insolvent by the Administratrix with impunity. The claimant who does not follow the procedure will be relegated to attempting to trace collectible funds in the hands of the devisees or legatees. See, *e.g., Grinels v. Legg,* 208 Va. 155 (1967); *First Nat'l Exchange Bank v. Seaboard Citizens Nat'l Bank,* 200 Va. 681 (1959); *Leake's Ex'r v. Leake,* 75 Va. 792 (1881).

A debts and demands hearing may be held within six months of the Administratrix's qualification. Thus, as a matter of course, a Commissioner's accounting of the estate's debts and an order of distribution may be ordered as soon as one year after qualification. For example, in this case, the Administratrix qualified on September 10, 2001, as the Administratrix of her son's estate. On July 24, 2003, she filed her final accounting and distributed the funds to herself as sole legatee.

Defendant Morris' theory is that the Plaintiffs' claims were forever barred because they were not filed at the Debts and Demands hearing on July 23, 2003. However, the Code of Virginia specifically provides that:

> Every Action under § 8.01-50 [Action for wrongful death] shall be brought by the personal representative of the decedent within two years after the death of the injured person.

Va. Code § 8.01-244(B).

Thus, under the clear terms of § 8.01-244(B), the Plaintiffs had until August 13, 2003, two years after the cause of action arose, to commence a wrongful death action.

The Court can find no statutory authority or case precedent for the proposition that the Debts and Demands procedure of §§ 64.1-171 to

64.1-180.1 of the Code of Virginia truncates or nullifies the specific statute of limitations set out in the Code for Wrongful Death actions.

What §§ 64.1-171 to 64.1-180.1 of the Code of Virginia does is remove the claimants' access to an easily identifiable fund for partial or complete satisfaction of their claim and immunizes the administrator from personal liability for her handling of the funds in the estate. However, Lorena Morris, as a devisee or legatee, and not as Administrator, may be liable for a judgment against the estate for the funds she received from the estate. Section 64.1-179 of the Code provides, as it apparently did in 1849, that:

> On or after the day named in the order, the court may order the payment and delivery to the legatees or distributees of the whole or a part of the money and other estate not before distributed, with or without a refunding bond, as it prescribes. *However, every legatee or distributee to whom any such payment or delivery is made, and his representatives, may, in a suit brought against him within five years afterward, be adjudged to refund a due proportion of any claims enforceable against the decedent or his estate which have been finally allowed by the commissioner of accounts or the court, or which were not presented to the commissioner of accounts, and the costs attending their recovery....*
>
> Any such personal representative who has in good faith complied with the provisions of this section and has, in compliance with or, as subsequently approved by, the order of the court, paid and delivered the money or other estate in his hands to whomsoever the court has adjudged entitled thereto shall be fully protected against the demands of creditors and all other persons.

(Emphasis added.)

The very wording of this section of the Code, "any claims ... which were not presented to the commissioner of accounts," recognizes that claims may be made against an estate after a debts and demands hearing. Her liability would not be as an administratrix, but as a devisee or legatee of estate funds which she may be required to refund if an appropriate suit is brought within the five year statutory period. This may require a separate suit against her personally and as distributee, but that issue is not presently before the Court. See *Grinels v. Legg*, 208 Va. 63 (1967).

Therefore, Defendant Morris' Motion to Dismiss or otherwise terminate the 2003 Legal Action on the grounds that the claim was not presented at the Debts and Demands Hearing is denied.

## C. *Are plaintiffs' claims barred by the statute of limitations?*

The entire premise of Defendant Morris' claim on the statute of limitations is that the Plaintiffs' claims are barred by § 8.01-244 because the proper statute of limitations is two years after the death, which gives rise to the cause of action, and the 2003 Legal Action is a nullity. Therefore, according to Plaintiffs, since the two year statute of limitations ran on August 13, 2003, and no valid or viable action has been filed against her, the statute of limitations has run.

Defendant Morris' claim is based on a false premise. As this Court held in Section II(A), *supra*, the 2003 Legal Action is valid. It was filed on August 4, 2003, and is well within the proper statute of limitations, which ran on August 13, 2003.

In light of the rulings in Sections II-A and II-B, *supra*, the Court need not reach the constitutional issues raised by Plaintiffs relating to the Debts and Demands notice provisions contained in §§ 64.1-171 to 64.1-180.1 of the Code of Virginia.

Plaintiffs' counsel are to draft an Order incorporating the ruling of this Opinion. This Order shall be captioned as an Order in Case No. CL03-00300 and Estate Case No. 01-329.

The Clerk is directed to send attested copies of this Opinion to David L. Parker, Esquire, and Nicholas Gilman, Esquire, counsel for plaintiffs, to Elizabeth S. Skilling, Esquire, counsel for Defendants, United States Aircraft Insurance Group and United States Aviation Underwriters, Inc., to Wilson F. Vellines, Esquire, counsel for Defendants, Shenandoah Flight Services, Inc., and SFS Aircraft, L.L.C., and to Steven M. Blatt, Esquire, counsel for Defendant, Lorena H. Morris.